Anselmo **DE LAURENTIIS** and
Fiorinda De Laurentiis

v.

Honorable **Alexander M. HAIG, Jr.,**
Secretary of State.

Civ. A. No. 81–0687.

United States District Court,
E. D. Pennsylvania.

Dec. 17, 1981.

---

James J. Orlow, Lawrence H. Rudnick, Wasserman, Orlow, Ginsberg & Rubin, Philadelphia, Pa., for plaintiffs.

Peter F. Vaira, Jr., U.S. Atty., Antoinette R. Stone, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## OPINION

EDWARD R. BECKER, District Judge.

## I. PRELIMINARY STATEMENT

### A. *Introduction*

This case presents the question whether the Freedom of Information Act ["FOIA"], 5 U.S.C. § 552 (1976), exempts from its general mandate of disclosure certain United States Department of State documents pertaining to the denial of an immigrant visa request.[1] Plaintiffs are Dr. Anselmo De Laurentiis, an Italian citizen currently residing in Italy, and his wife, Fiorinda, a native-born United States citizen currently residing in Philadelphia. Defendant is the Secretary of State, Alexander M. Haig, Jr. The case came before us on cross motions for summary judgment. On October 30, 1981, we entered an order denying plaintiffs' motion and granting that of defendant, with the notation that a memorandum setting forth our reasons would follow. This is that memorandum, which commences with a recitation of the undisputed background facts.

### B. *Factual Background*

Sometime prior to August 1979 Dr. De Laurentiis applied for an immigration visa in order to join his wife in this country. That application was denied. In August 1979, believing that they could obtain information pertaining to Dr. De Laurentiis' visa denial, plaintiffs, acting through counsel, sought access to certain immigration and visa files held by the United States Consulate General in Naples, Italy. Plaintiffs were informed that these files had been transferred to the Department of State in Washington, D.C., and plaintiffs accordingly pursued their request there. On December 7, 1979, the Visa Services Director of the Department of State informed them that the desired documents would not be produced because they were exempt from disclosure under FOIA § 552(b)(1) ["exemption 1"].[2] The only other information furnished to plaintiffs was that Dr. De Laurentiis had been found ineligible for an immigration visa because he was believed to be "actively engaged as a director of a Communist affiliated organization in Italy." *See* 8 U.S.C. § 1182(a)(28)(C) (1976) (aliens who are members of or affiliated with the Communist Party are ineligible to receive visas).

---

1. Our jurisdiction is established by 5 U.S.C. § 552(a)(4)(B) (1976):

On complaint, the District Court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter *de novo*, and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection B of this section, and the burden is on the agency to sustain its action.

2. This section exempts from the FOIA's general mandate of disclosure matters that are

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order

. . . .

So that they might refute the allegations that Dr. De Laurentiis had Communist affiliations, plaintiffs formally filed a FOIA request on April 3, 1980, in accordance with State Department regulations. *See* 22 C.F.R. § 6.1. Plaintiffs' FOIA request, submitted through counsel, states in relevant part:

> I am writing to request certain records relating to Anselmo De Laurentiis who had applied to the United States Consul at Naples, Italy to immigrate to the United States on a petition of his wife, a United States citizen. Mrs. De Laurentiis is a United States citizen and would have wanted her husband to immigrate to the United States so that the couple can reside in the United States, except for information contained in the files. Prior and formal requests had been unavailing . . . Accordingly, I am writing to inquire as to the information relating to the allegation that Anselmo De Laurentiis was or is inadmissible to the United States.

On June 30, the Deputy Assistant for Visa Services notified plaintiffs that their FOIA request had been denied on the ground that the requested documents were exempt from release under the FOIA. Some documents were withheld under exemption 1; others were withheld under § 552(b)(3) ["exemption 3"].[3] At this time the State Department released seven documents pertaining to Dr. De Laurentiis' visa application. The documents released, however, were nothing more than copies of plaintiffs' counsel's correspondence with State Department officials.

Plaintiffs promptly appealed the denial of their FOIA request to the Appeals Review Panel of the Department of State. Plaintiffs received no meaningful response from the Appeals Review Panel until June 11, 1981, almost a year later, when they were advised that their appeal had been denied. The Appeals Review Panel informed plaintiffs that ten of the documents pertaining to Dr. De Laurentiis' visa application were being withheld pursuant to exemption 3, and that four documents were being withheld pursuant to 5 U.S.C. § 552(b)(5).[4] Upon further review, the government has determined that only eight documents merit withholding, all of them under exemption 3, and that three of the eight documents also merit withholding under exemption 1.[5] The government no longer asserts an exemption under 5 U.S.C. § 552(b)(5).

### C. *Procedural History*

Plaintiffs filed the present action in February 1981, prior to their receiving notice of the Appeals Review Panel's decision. On April 7, 1981, plaintiffs moved to compel the preparation of a "*Vaughn* index". The *Vaughn* index, first developed in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), is an itemized, indexed inventory of the documents that the government agency contends are exempt from disclosure. A detailed statement justifying the agency's refusal to release a particular document is supposed to accompany each entry. We granted the motion for a *Vaughn* index on April 21, 1981. The government complied with that order by filing an affidavit

---

3. This exemption permits withholding in accordance with statutes which require information to be withheld, or permit information to be withheld, when the statute establishes particular criteria for withholding, or refers to particular types of information to be withheld. Exemption 3 is considered in detail *infra*.

4. This section exempts from the FOIA's general mandate of disclosure matters that are "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ."

5. The government's exemption 1 claim is founded principally on Executive Order 12065. Executive Order 12065 provides for the confidential treatment of information provided to the United States Government in confidence by foreign government officials and establishes a presumption that unauthorized disclosure of such confidential information "reasonably could be expected to cause at least identifiable damage to the national security."

Because we dispose of the case on exemption 3 grounds, we do not determine whether exemption 1 has been properly applied. *See* n.15 *infra*.

by Robert W. Maule, Deputy Assistant Secretary of State for Visa Services.

Plaintiffs were dissatisfied with this submission, claiming that it lacked the specificity required of a *Vaughn* index. They thereupon moved for further discovery to enable them to challenge the Government's classification and the veracity of Mr. Maule's affidavit.[6] The government opposed this motion, insisting that the requested discovery was unnecessary in light of Mr. Maule's original affidavit and that, if granted, the discovery would reveal the very information it sought to withhold under the FOIA exemptions. Defendant subsequently filed a second affidavit by Mr. Maule which partially satisfied the discovery request. We then held the motion for further discovery in abeyance pending a hearing on the cross motions for summary judgment.[7] There being no genuine issue of material fact, we will proceed to rule on the summary judgment motions.

## II. DISCUSSION

■ The Government's contention that all the withheld documents are exempt under exemption 3 and, alternatively, that three of the documents were properly withheld under exemption 1, is disputed by plaintiffs who submit that the documents were improperly withheld and that we must order their disclosure.[8] Our task is to determine whether the Government has carried its burden of proving that withholding was proper. FOIA creates a presumption in favor of disclosure. *Ferri v. Bell*, 645 F.2d 1213 (3d Cir. 1981). We must make a *de novo* determination of the withholding and the defendant must bear the burden of proving that the statutory exemption is applicable. 5 U.S.C. § 552(a)(4)(B) (1976). This mandate precludes us from giving any special deference to the State Department's findings, *Ferri*, 645 F.2d at 1221, especially where, as here, the issue is whether the documents withheld truly fall within an exempting provision of the FOIA. These motions present a mixed question of fact and law in which defendant has no special expertise meriting this court's deference. *See id.*

Because the government contends that *all* the documents at issue are exempt from disclosure under exemption 3, we turn first to consideration of that provision. Under exemption 3, FOIA does not require disclosure of matters that are "specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of information to be withheld." The Government contends that § 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), applies to the plaintiffs' request and authorizes withholding under exemption 3. That statutory provision reads as follows:

> The records of the Department of State and diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, and administration, or enforcement of the immigration, nationality, and other laws of the United States except that in the discretion of the Secretary of State certified copies of such records may be made to a court which certifies that the information contained

---

6. Specifically, plaintiffs intended to propound supplemental interrogatories requiring defendant to disclose (1) the dates on which the activities reported in several documents occurred; (2) the date upon which the information in the confidential documents was provided to any American Consulate or United States agency; and (3) the reasons why an edited version of the documents could not be provided to plaintiffs. These inquiries are directed towards challenging the exemption 1 classification.

7. Because we need not reach the exemption 1 issue, the discovery motion is moot.

8. Both parties agree that, if we determine that we cannot decide whether declassification of the documents was proper upon the basis of the evidence presently in the record, we should hold an *in camera* review of the withheld documents. *See generally Lame v. United States Dept. of Justice*, 654 F.2d 917 (3d Cir. 1981).

in such records is needed by the court in the interest of the ends of justice in a case pending before the court.

The Government submits that § 222(f) of the Immigration and Nationality Act qualifies as a withholding statute under both clause A and B of exemption 3. Under the literal terms of clause A of exemption 3, it would appear that in order to qualify, § 222(f) of the Immigration and Nationality Act would have to strip the Secretary of State of all discretion on the issue of disclosing records pertaining to the issuance or refusal of visas. The Government contends that § 222(f) qualifies as a mandatory withholding statute because the Secretary, in the absence of certification from a court, has no discretion when it comes to disclosing visa records. Plaintiffs counter this argument by pointing out that § 222(f) on its face vests the Secretary of State with discretion in the matter of disclosing visa application records; i.e., the statute gives the Secretary discretion where the court makes an "ends of justice" determination.

■ Plaintiffs support their argument by referring us to the unpublished opinion in *Serbian Eastern Orthodox Diocese for the*

*United States of America and Canada v. United States . Department of State*, No. 77–1413 (D.D.C., filed Dec. 30, 1977), in which Judge Pratt ruled that § 222(f) of the Immigration and Nationality Act did not qualify under clause A of exemption 3 of the FOIA. Judge Pratt reasoned that the two sections could not be reconciled because exemption 3(A) "demands that an exempting statute 'leave no discretion on the issue of disclosure,' yet § 222(f) allows submissions to courts 'in the discretion of the Secretary.'" We believe the question to be a close one,[9] but do not reach it, however, for we believe that § 222(f) of the Immigration and Nationality Act squarely falls under exemption 3(B) of FOIA. We reach this conclusion: (1) from the plain language of § 222(f); (2) from an analysis of the policy basis for the statutes and the statutory amendments which constitute exemption 3(B); and (3) the legislative history of exemption 3(B) itself.

**A. The Plain Language and Policy of Exemption 3(B)**

We start with the plain language of § 222(f) and conclude that § 222(f) qualifies

**9.** While Judge Pratt's literal reading may be correct, several considerations suggest the contrary. When Congress rewrote exemption 3 in 1976 in wake of the Supreme Court's opinion in *Administrator, Federal Aviation Administration v. Brown*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), *see* textual discussion *infra*, Congress intended to insure that exemptions from FOIA would be legislative determinations and not administrative ones. *Irons & Sears v. Dann*, 606 F.2d 1215, 1220 (D.C.Cir.1979); *Lee Pharmaceutical v. Kreps*, 577 F.2d 610, 614-618 (9th Cir. 1978); *American Jewish Cong. v. Kreps*, 574 F.2d 624, 628 (D.C.Cir.1978). Section 222(f), even though it leaves the Secretary of State with a residue of discretion in the wake of a judicial certification, does not pose a threat of administrative encroachment upon a legislative prerogative. Section 222(f) generally strips the Secretary of State of all discretion except in the rare instance when a court certifies that justice requires disclosure. Only in those extraordinary circumstances does the statute allocate any discretion to the Secretary of State. Even then, the tension is not between legislative and administrative interpretations of the FOIA exemptions, but between those of the Secretary and the court.

We also believe that, as a matter of statutory interpretation, a plausible basis exists for finding that § 222(f) leaves "no discretion" regarding disclosure to the Secretary. In *Fund for Const. Gov't. v. National Archives and Records Serv.*, 656 F.2d 856 (D.C.Cir.1981), the court found that Fed.R.Crim.P. 6(e), if considered a statute, satisfied the criteria within clause (A) of exemption 3. The language used by the court in reaching that conclusion is relevant here:

The rule makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule. It further sets forth in precise terms to whom, under what circumstances and on what conditions grand jury information may be disclosed. Any disclosure to persons outside of government may only be made pursuant to a court order. Therefore, the rule's ban on disclosure is for FOIA purposes absolute and falls within subpart (A) of exemption 3.

*Id.* 868 (citations omitted). *Cf. Lee Pharmaceuticals, supra*, 616-17 (statute permitting disclosure of patent applications "in special circumstances" and when "necessary to carry out the provisions of any Act of Congress" did not vest administrative agency with unacceptable discretion under exemption 3(A)).

on its face as an exempting statute under exemption 3(B). This exemption provides that a statute establishing "particular criteria for withholding" or referring to "particular types of information to be withheld" is an exempting statute under FOIA. While § 222(f) does not "establish particular criteria for withholding," it does refer "to particular types of information to be withheld." Section 222(f) provides that "records of the Department of State and diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential . . . ." This category of information is sufficiently delimited to fit within the statutory language.

Exemption 3 resulted from Congress' dissatisfaction with the broad administrative discretion in the withholding of documents under FOIA permitted by the Supreme Court's decision in *Administrator, Federal Aviation Administration v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975) ["FAA Administrator"]. In that case, the Court ruled that a statute permitting an administrative agency to withhold information upon a written objection when, in the judgment of the agency, "a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public," *id.* 259 n.4, 95 S.Ct. 2144 n.4, qualified as an exempting statute under FOIA. Congress' efforts to curtail such broad administrative discretion in withholding agency records produced the present exemption 3. *See generally American Jewish Cong. v. Kreps*, 574 F.2d 624, 627–28 (D.C.Cir.1978). Section 222(f) does not authorize the unfettered discretion which Congress found objectionable in *FAA Administrator*. In that case, the statute permitted withholding of "information contained in any application, report, or document" filed pursuant to the full panoply of laws establishing and gov-

erning the federal aviation program or otherwise obtained by the Civil Aeronautics Board or the FAA Administrator. Here, § 222(f) limits the Secretary's withholding authority to only those documents pertaining to the issuance or refusal of entry visas. The potential for widespread administrative discretion over the withholding of a vast category of documents is simply lacking in § 222(f).

We find precedent for our conclusion that § 222(f) qualifies as an exemption 3(B) statute in *Irons & Sears v. Dann*, 606 F.2d 1215 (D.C.Cir.1979), where a similarly formulated statute governing the handling of patent applications was found by the United States Court of Appeals for the District of Columbia to qualify as a 3(B) exempting statute. In *Irons & Sears v. Dann*, appellants sought access under FOIA to all decisions of the Patent and Trademark Office disposing of requests by would-be patentees for a filing date earlier than the one initially assigned to their applications. The Patent and Trademark Office refused to provide such information, arguing that the information requested was covered by a 3(B) exempting statute, § 122 of the Patent Act, 35 U.S.C. § 122 (1976), which provides:

> Applications for patents shall be kept in confidence by the Patent and Trademark Office and no information concerning the same given without authority of the applicant or owner unless necessary to carry out the provisions of any Act of Congress or in such special circumstances as may be determined by the Commissioner.

In finding that § 122 of the Patent Act was a withholding statute under exemption 3(B),[10] the Court noted:

> [T]he mere presence of some residual administrative discretion does not take § 122 out of exemption 3. It is quite clear that the requirements set forth in that exemption are phrased in the dis-

---

**10.** The court had first considered whether § 122 of the Patent Act fell under the first part of the proviso in exemption 3, but found that the Patent Act was not a statute requiring non-disclosure "in a manner as to leave no discretion on the issue," because it permitted the commis-

sioner to release information concerning patent applications when he found that there existed the appropriate "special circumstances." 606 F.2d at 1220. *Contra, Lee Pharamaceuticals, supra* note 9.

junctive, and it is therefore sufficient if either prong of the proviso is satisfied. *We believe that § 122 does satisfy the second prong because it refers to particular types of matters to be withheld— namely, patent applications and information concerning them.*

*Id.* 1220–21 (emphasis supplied, footnote omitted).

*Irons & Sears* shows that a statute providing that the withholding of applications and information concerning them, even though such withholding may be permissive, may be precise enough to qualify as a statute referring to particular types of matters to be withheld as to qualify under exemption 3(B). Section 222(f) of the Immigration and Nationality Act is analogous to § 122 of the Patent Act in this respect. Section 222(f) does not allow the Secretary of State to withhold a limitless number of documents in his discretion. The statute only empowers him to withhold records pertaining to the issuance or refusals of visas or permits to enter the United States. The statute is therefore an exempting statute under exemption 3(B) because it "refers to particular types of matters to be withheld."

Two other courts have found § 222(f) to be an exempting statute under exemption 3. In *Church of Scientology of California v. Department of State*, 493 F.Supp. 418, 423 (D.D.C.1980), Judge Robinson, interpreting the statutes on their face, found § 222(f) to be a withholding statute under exemption 3. Regrettably, Judge Robinson did not explain whether § 222(f) fell under clause A or the first or second parts of clause B of exemption 3. In *Serbian Eastern Orthodox Diocese, supra*, Judge Pratt noted that the legislative history to exemption 3(B) made explicit reference to § 222(f) as an example of a qualifying statute, and concluded that

"the provisions for limited disclosure satisfied the requirement of exemption 3(B) that the statute establish particular criteria for withholding or refer to particular types of matter to be withheld." *Id.* 4. We are in agreement with Judge Pratt, for the legislative history does, indeed, indicate that Congress intended § 222(f) to qualify as an exempting statute under exemption 3(B). Before developing this point, however, we must detail the general legislative history of the present exemption 3(B).

### B. The Legislative History of Exemption 3(B)

Exemption 3(B) originated in a section of H.R. 11656, which was introduced in 1976 in response to *FAA Administrator.* In addition to containing provisions governing the openness of government meetings, H.R. 11656 provided that information may be withheld by a government agency if the information was "required to be withheld from the public by a statute establishing particular types of information." *Sourcebook, supra*, at 474. That bill was referred to the House Committee on Government Operations, which reported it without any change in this language and then referred it to the House Judiciary Committee. The Judiciary Committee reported H.R. 11656, after amending it so that information could be withheld when it was "required *or permitted* to be withheld from the public by any statute establishing particular criteria or referring to particular types of information." *Sourcebook, supra*, at 511 (emphasis supplied). The Judiciary Committee report accompanying the bill contained a significant footnote which indicated that § 222 of the Immigration and Nationality Act was intended to be included as an exemption 3 withholding statute.[11]

---

11. House Judiciary Committee Report on H.R. 11656, H.R.Rep. 94–880, Part II, 94th Cong., 2d Sess. (April 8, 1976), *reprinted in* 3 [1976] U.S. Code, Cong., & Ad.News 2183, 2224; *Sourcebook, supra*, at 565:

    CLARIFICATION CONCERNING EXCEPTIONS

    The committee considered the provisions of the exemption provided in subsection (c)(3)

of § 552(b) concerning the disclosure of information required to be withheld from the public by any statute establishing particular criteria or referring to particular types of information. This exemption was discussed at page 9 of the report of the Committee on Government Operations, which pointed out that, under the original language of this bill, a statute that permits withholding rather than

The Judiciary Committee then committed H.R. 11656 to the Committee of the Whole House where the entire bill was subjected to an amendment in the nature of a substitute submitted by Representative Flowers. The Flowers amendment, however, merely incorporated the 3(B) language in the bill reported by the Judiciary Committee.[12] *Sourcebook, supra*, at 655.

Representative McCloskey then submitted an amendment to the Flowers amendment, *see* n.12 *supra*, which read: information may be withheld when it is "specifically exempted by statute . . . provided that such statute (A) requires that the matters be withheld from the public, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Sourcebook, supra*, at 689. The McCloskey amendment was passed by the House; with only minor modification, the McCloskey amendment is the current exemption 3(A) and (B).[13]

The Judiciary Committee Report makes crystal clear the Congressional intention to place § 222(f) within the ambit of exemption 3(B). Even though exemption 3(B) was subject to reworking after it left the

House Judiciary Committee, we are certain that if § 222(f) were an exempting statute contemplated by the Flowers amendment, then it surely would be covered by the present exemption 3 which expanded the definition of exempting statutes. Thus, the footnote reference to § 222(f) of the Immigration and Nationality Act in the House Judiciary Committee Report certainly survived the ensuing legislative process of transforming the Committee report into law.

Plaintiffs, however, contend that the sequence of amendment by which H.R. 11656 evolved into law nullified the value of the House Judiciary Committee Report as a guide to Congressional intent. Plaintiffs point out that the words "or permitted," which were contained in the Flowers proposal, did not survive the McCloskey amendment. Representative McCloskey eliminated these words because he felt that by adding them "the new language, in effect broadened the exemption to allow an administrator under a permissive secrecy statute to keep information secret, unless the statute laid out specific criteria." *Sourcebook, supra*, at 690. Plaintiffs argue that

actually requiring it would not come within the exception provided in the paragraph. While the committee agrees that the language concerning criteria of types of information should be retained, it was felt that limiting the exemption to information required to be withheld by statute would be too restrictive. Rather, the exemption should extend to those statutes which require or permit information to be withheld from the public where the statute establishes criteria or refers to particular types of information.

At this point the Committee Report appended a footnote referring to § 222(f) of the Immigration and Nationality Act. The footnote reads as follows:

This will clarify the fact that statutes such as 50 U.S.C. 403(d)(3), concerning security information, and *8 U.S.C. 222, concerning confidential records of the State Department concerning visa and related matters, are included.* [Emphasis added.]

12. Both parties' briefs exhibit some confusion on this point, for they treat the Flowers amendment as a completely new attempt to put the Judiciary Committee Report into statutory form. To the contrary, insofar as his amendment pertained to exemption 3(B), Representative Flowers merely incorporated the bill ham-

mered out in the Judiciary Committee. Nonetheless, so that our opinion dovetails with the parties' arguments, we will continue to refer to the bill produced by the Judiciary Committee and adopted by Representative Flowers as "the Flowers amendment."

13. Exemption 3(B) was enacted as part of the Government in the Sunshine Act, Pub.L.No. 94–409, § 5(b), 90 Stat. 1247 (1976). The Senate version of this bill, S. 5, contained no provision amending the third exemption set forth in 5 U.S.C. § 552(b). It was the House of Representatives' amendment to S. 5 which contained the McCloskey amendment. The Conference Committee adopted the House amendment almost verbatim. *See* Joint Explanatory Statement of the Committee of Conference on P.L. 94–409, 94th Cong., 2d Sess. 3 [1976] *U.S.Code, Cong. & Ad.News*, 2260–61. The only difference between the McCloskey amendment and the final statute is found in the addition of the words "in such a manner as to leave no discretion on the issue" following the words "requires that the matters be withheld from the public," which were contained in the McCloskey amendment.

this shows that the McCloskey amendment was designed to cut back on the Flowers amendment, which swept too far because it covered permissive as well as mandatory withholding statutes. Plaintiffs further argue that § 222(f) was one of the permissive statutes covered by the Flowers proposal which the McCloskey amendment was designed to exclude as a withholding statute.

Plaintiffs' interpretation rests upon a skewed reading of the legislative history and the statutes themselves. While the legislative history does not clarify the reason for Representative McCloskey's trouble with the words "or permitted," we are certain that the McCloskey amendment did not eliminate all permissive statutes from the ambit of exemption 3(B). For permissive withholding statutes, establishing particular criteria for withholding or referring to particular types of information to be withheld (the same as those proposed in the Flowers amendment), would continue to qualify under the McCloskey amendment's exemption 3(B).[14] Indeed, in order to give effect to plaintiffs' interpretation, we would have to read exemption 3 as exclusive of any permissive withholding statute; *i.e.* clause (B) of exemption 3 would not apply to permissive withholding statutes, but only to mandatory withholding statutes which establish "particular criteria for withholding or refer to particular types of information to be withheld." This, however, would render clause (B) a nullity, for the specific types of mandatory withholding statutes covered by clause (B) are already covered by the more general clause (A).

The only sensible reading of exemption 3, therefore, is that clause (A) refers to mandatory withholding statutes, and clause (B) refers to particular types of permissive withholding statutes, which, if they meet the criteria required by clause (B), qualify as exempting statutes under the FOIA. *See Founding Church of Scientology of Washington, D.C., Inc. v. National Security Agency,* 610 F.2d 824, 827 (D.C.Cir.1979); *American Jewish Cong., supra,* at 628 ("Subsection (B) does leave room for administrative discretion in two carefully defined situations. . . ."). Plaintiffs' interpretation also is inconsistent with several opinions holding statutes providing some administrative discretion to be qualified under exemption 3(B). *See, e.g., Irons & Sears v. Dann, supra.*

The Flowers amendment would have required both mandatory and permissive withholding statutes to establish particular criteria or refer to particular types of information in order to qualify as an exempting statute. The effect of the McCloskey amendment was to permit withholding of agency records under a mandatory withholding statute as long as the federal agency had no discretion on the issue. Only permissive withholding statutes were required to establish particular criteria for withholding or refer to particular types of information to be withheld in order to qualify as an exempting statute. In Representative McCloskey's words:

> What I have done, essentially, in this amendment is to merely divide the two

---

14. The correctness of this interpretation may be seen from one of the exchanges between Representatives McCloskey and Fascell:

> MR. FASCELL. I gather that what the gentlemen is saying is that the qualifying clauses [in the Flowers proposal], to wit, establishing particular criteria or referring to particular types of information so qualify the exemption under the Freedom of Information Act or mandatory statute to the extent that the gentleman or somebody feels that even though we have a statute which authorizes an agency to withhold information, the language would be such that it would be required to release the information. That is the way I understand the gentlemen's argument.
>
> Therefore, he changes this around through the present amendment so that the qualifying

> amendment only applies to permissive statutes, those statutes which provide permission for the administrator: is that correct? It would be required that there be particular criteria or particular types of information, but that it would not apply to mandatory statutes; is that correct?
>
> Mr. McCLOSKEY. That is correct.
>
> In other words, we went too far in requiring all mandatory statutes of secrecy to be made subject to the Freedom of Information Act. We are pulling back from that requirement that all information required now to be secret by one law is to be made available under this new law. We are pulling back from the first part of the section.

*Sourcebook, supra,* at 694.

situations. If a statute, such as the Census Act, requires the Census Administrator to keep all information secret, it will not be subject to disclosure. On the other hand, if the statute merely permits the FAA Administrator to exercise discretion as to whether or not information shall be made public, *without specific criteria*, as to how he shall exercise that discretion, it must be released unless the Freedom of Information Act provisions permit it to be withheld.

*Sourcebook, supra,* at 690 (emphasis supplied). *See also id.* 690 (comments of Rep. McCloskey); 691 (comments of Rep. Fascell; 693–95 (comments of Rep. McCloskey).

Because all of the documents requested fall under exemption 3(B), we need not address the parties' contentions concerning exemption 1. Our ruling also obviates any need for an *in camera* review of the documents at the heart of this dispute.[15] Having found that § 222(f) does indeed qualify as an exempting statute, we have granted summary judgment in the defendant's favor.

---

[15] The issues plaintiffs raise involving exemption 1 involve difficult questions concerning FOIA and the role of a court in resolving disputes affecting foreign affairs and national security. Plaintiffs ask us to determine, *inter alia*, whether release of the disputed documents would cause an identifiable harm to the national security. Plaintiffs argue that the Government may not refuse to disclose these documents on the ground of a presumption established by Executive Order 12065 that "unauthorized disclosure of foreign government information or the identity of a confidential foreign source [will] cause at least identifiable damage to the national security." Rather, plaintiffs argue, the government must make its point through detailed supporting submissions or an *in camera* review by this court of the documents themselves.

Plaintiffs also argue that exemption 1 is inapplicable because the disputed documents were not properly and timely classified pursuant to Executive Order 12065. They contend that although the government has corrected its prior omissions and classified the documents long after they entered the files, it did so only in response to their FOIA request and ask that we find such actions to have been taken in bad faith, thus precluding application of exemption 1.

We need not and do not reach these troublesome issues. First of all, only three documents are being withheld under exemption 1; the entire case may be disposed of on exemption 3 grounds. In light of our conclusion that all the documents may be withheld under exemption 3(B), the expenditure of judicial time required by the exemption 1 inquiry would be pointless. Secondly, we do not believe that this court should needlessly opine about matters involving foreign affairs and national security. We do not wish to unnecessarily second-guess a Presidential determination, confirmed by the affidavit of Robert W. Maule, Deputy Assistant Secretary of State, that the national security would be damaged by release of these documents. *Cf. Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (act of state doctrine grounded in functions and relative expertise of federal government branches).