**IVANHOE CITRUS ASSOCIATION,
et al., Plaintiffs,**

v.

**Honorable James C. HANDLEY, et
al., Defendants,**

**Capital Legal Foundation,
Defendant-Intervenor.**

**Civ. A. No. 85–2106.**

United States District Court,
District of Columbia.

July 12, 1985.

Julian B. Heron, Jr., Edward M. Ruckert, and Christine Coffey Ryan of Heron, Burchette, Ruckert & Rothwell, Washington, D.C., for plaintiffs.

Jonathon Young and Barbara L. Gordon, Attorneys, Dept. of Justice, Federal Programs Branch, Washington, D.C., also on brief: Richard K. Willard, Acting Asst. Atty. Gen., and Joseph E. diGenova, U.S. Atty., Washington, D.C., for defendants.

Anthony S. Murry, of the Capital Legal Foundation, Washington, D.C., for defendant-intervenor.

## INTRODUCTION

CHARLES R. RICHEY, District Judge.

This is a "reverse" Freedom of Information Act ("FOIA") case, in which plaintiff seeks to enjoin defendants' release of certain documents to defendant-intervenor. The case is before the Court on plaintiffs' motion for summary judgment, defendants' motion to dismiss or, in the alternative, for summary judgment, and defendant-intervenor's cross motion for summary judgment. The parties agree that there is no dispute over any material facts, and, for the reasons stated below, the Court grants defendants' and defendant-intevenor's motions for summary judgment.

The parties in this case are involved in the orange production business. There are three types of entities involved in the process of producing oranges and eventually tetting them to market. There are the growers, who produce the oranges; the handlers, who generally contract with the growers to pick the oranges, pack them, and sell and distribute them; and the mar-

keting organizations, who buy the oranges from the handlers and sell them to wholesale and retail outlets.

Plaintiffs in this action are handlers, or groups containing members who are handlers, of California and Arizona navel and Valencia oranges. As handlers, they have contracts with certain growers for packing and distributing oranges. Pursuant to requests of defendants, the United States Department of Agriculture ("USDA") and certain of its agents, plaintiffs have submitted to defendants information which includes the names and addresses of growers from whom they receive navel and Valencia oranges. Defendant-intervenor Capital Legal Foundation ("Capital") is a non-profit law firm which has requested some of this information from defendants.

## PROCEDURAL HISTORY

On August 14, 1984, pursuant to FOIA, 5 U.S.C. § 552, Capital requested from defendants a list of names and addresses of orange growers, which list was generated by defendants in connection with a grower referendum. This request was made on behalf of Carl Pescosolido, a grower and handler of navel and valencia oranges in California. On May 15, 1985, receiving an unsatisfactory response from defendants, Capital filed suit in this Court seeking to obtain, pursuant to FOIA, the lists. *Capital Legal Foundation v. USDA*, Civil Action No. 85–1557. On June 26, 1985, Capital and USDA settled their lawsuit, agreeing that USDA would turn over the requested document by Monday, July 1, 1985. On June 27, 1985, some of the plaintiffs herein, not realizing that the case had been settled and dismissed, and believing that the requested documents contained confidential lists of growers under contracts with the handler plaintiffs, filed a motion to intervene in Civil Action No. 85–1557. Having filed to late to intervene, plaintiffs on Friday, June 28, 1985, filed this "reverse" FOIA action seeking to enjoin the release of the list of orange growers. Plaintiffs also moved for a temporary restraining order. That same day, the Court

held a hearing on the motion, which the Court granted.

## GOVERNMENTAL REGULATION OF THE PRODUCTION OF ORANGES

The Agricultural Marketing Agreement Act of 1937 ("AMAA", or "Act"), 7 U.S.C. § 601 *et seq.*, represents Congress's intention to allow the Secretary of Agriculture to establish orderly marketing conditions for agricultural commodities. *See id.* § 602. The Secretary may establish marketing agreements with growers, handlers, and others in the trade, which agreements are exempt from the prohibitions of antitrust laws. *Id.* § 608b. Pursuant to the authority granted to the Secretary under the Act, the Secretary enacted Marketing Orders 907 and 908 to regulate the handling of navel and Valencia oranges, respectively, in the continental United States and Canada. 7 C.F.R. Parts 907 and 908. Essentially, the marketing orders regulate the flow of fresh oranges to market by permitting each handler to ship a certain percentage of the total amount of oranges to be handled. *See* 7 U.S.C. § 608c. Marketing orders 907 and 908 each established an Administrative Committee for navel and Valencia oranges, respectively. 7 C.F.R. §§ 907.20 and 908.20. The Administrative Committees are designed to generally administer the orders, to recommend amendments, and to act as intermediaries between the Secretary and growers and handlers. *Id.* §§ 907.28, 907.29, 908.28, 908.29.

Under the AMAA, the Secretary of Agriculture must conduct a referendum of growers or processors to determine whether a new marketing order is favored by the growers or processors. 7 U.S.C. § 608c(19). The Secretary may, but is not required to, conduct such referenda in the case of an amendatory order. *Id.* The AMAA does not require the Secretary to keep confidential any information obtained pursuant to 7 U.S.C. § 608c. These referenda are conducted by the Agricultural Marketing Service ("AMS") of the USDA. Doyle Dec. ¶ 1.[1] To conduct these referenda, the AMS must develop a list of grow-

---

**1.** In support of their motion for summary judgment, defendants have submitted a declaration

of William J. Doyle, Chief of the Fruit Branch of AMS's Fruit and Vegetable Division.

ers, such that sought by Capital in the case at bar. *Id.* ¶ 6.

During the period August 15 through August 31, 1984, AMS conducted referenda for the issuance of an amendatory order for marketing orders 907 and 908. Thus, AMS had to compile a list of grower names, addresses, and other information. Because the Administrative Committees maintained a computer data base with the pertinent information, AMS obtained the lists from the Committees. *Id.* ¶ 7. The source of the information contained in the Committees' computer data base are forms provided to the Committees by the handlers of navel and Valencia oranges. *Id.* It appears that the handlers, such as plaintiffs, provided this information on forms printed by Administrative Committees, known as Forms 1–A. These Forms 1–A state that the requested information "is required to determine and verify handler prorate bases", and that false statements provided on the forms would subject the handler to fines and criminal penalties. It is these lists, compiled by the Administrative Committees on Forms 1–A to conduct the August, 1984, referendum, and containing only the names and addresses of growers, which USDA has agreed to turn over to Capital.

Other sections of the AMAA allow the Secretary of Agriculture to acquire certain information to enable him to perform certain functions under the Act:

> All parties to any marketing agreement, and all handlers subject to an order, shall severally, from time to time, upon the request of the Secretary, furnish him with such information as he finds to be necessary to enable him to ascertain and determine the extent to which such agreement or order has been carried out or has effectuated the declared policy of this chapter and with such information as he finds to be necessary to determine whether or not there has been any abuse of the privilege of exemptions from the antitrust laws.

7 U.S.C. § 608d(1).

This section goes on the state that "all information furnished to or acquired by the Secretary of Agriculture pursuant to this section shall be kept confidential by all officers and employees of the Department of Agriculture." *Id.* § 608d(2). The confidentiality, however, is not absolute:

> Nothing in this section shall be deemed to prohibit (A) the issuance of general statements based upon the reports of a number of parties to a marketing agreement or of handlers subject to an order, which statements do not identify the information furnished by any person....

*Id.* The statute provides for a fine, criminal conviction, and removal from office for any person violating the confidentiality provisions. *Id.*

Plaintiffs contend that they provided this information to the Administrative Committees pursuant to this section of the AMAA, and that it is protected by the Act's confidentiality provisions. Indeed, this is the position taken by AMS upon Capital's August, 1984, administrative FOIA request. In a letter dated February 15, 1985, defendants confirmed the denial of Capital's administrative appeal, stating that the requested grower list was exempt from release under FOIA exemptions 3, 4, and 6, 5 U.S.C. § 552(b)(3), (b)(4), and (b)(6). As noted, defendants changed their position, and agreed to settle Capital's lawsuit, Civil Action No. 85–1557, by releasing the lists. Plaintiffs, fearing that the release of this information would place the integrity of the marketing programs for navel and Valencia oranges in jeopardy, brought this suit to enjoin the release of the lists.

## PLAINTIFFS HAVE STANDING TO MAINTAIN THIS ACTION

Defendants contend that plaintiffs do not even have standing to bring this action to enjoin USDA from disclosing information provided to it by plaintiffs. This contention fails.

The standing doctrine is a constitutional requirement which derives from the "case or controversy" limitation found in Article III. Plaintiffs must demonstrate that they will suffer an "injury-in-fact" from the actual or threatened conduct of

defendants. *E.g., Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982). In addition to this constitutional requirement, plaintiffs must also satisfy certain prudential limitations, including the following: (1) that the alleged injury can be traced to the actions of defendants, and (2) that the alleged injury is likely to be redressed by a favorable decision. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Harrington v. Bush,* 553 F.2d 190, 205 n. 68 (D.C.Cir.1977). Plaintiffs here meet these requirements, and thus they have standing to challenge the release of the grower list.

█ Plaintiffs contend that the release of this list will harm the integrity of the orange production market. While this alleged injury is somewhat speculative, it is sufficient in the case at bar. Plaintiffs allege a violation of the AMAA, a statute designed to maintain an orderly market for the distribution of produce. *See* 7 U.S.C. § 601 *et seq.* As handlers, plaintiffs are members of one of the few types of entities involved in that market. Plaintiffs also provided the information to defendants, allegedly pursuant to an understanding of confidentiality. Although the envisioned dangers to the marketplace may never materialize, and the charge of confidentiality may be legally deficient, plaintiffs have alleged a sufficient stake in the outcome of this litigation to confer standing. *Sierra Club v. Morton,* 405 U.S. 727, 732–33, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636 (1972). Because there will be no control over the dissemination of this information once it is released, plaintiffs have standing to present their claims of confidentiality. The Court cannot dismiss this case for lack of standing.

## PLAINTIFFS HAVE NO RIGHT OF ACTION UNDER FOIA

█ In the seminal "reverse" FOIA case of *Chrysler Corp. v. Brown,* 441 U.S. 281,

99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), the plaintiff had furnished certain reports to the Defense Logistics Agency, as was required by law. Some third parties had requested the information from the Agency, and the plaintiff, Chrysler, sued to enjoin the release of the documents. The Supreme Court held that FOIA merely compels agency disclosure of certain nonexempt documents. 441 U.S. at 292, 99 S.Ct. at 1712. Merely because certain materials are exempt under FOIA does not impose on the agency an affirmative duty to withhold the information. *Id.* at 291, 99 S.Ct. at 1712. The agency still has discretion to disclose exempt information. *Id.* at 294, 99 S.Ct. at 1713. Thus, FOIA provides no right of action to enjoin agency disclosure. *Id.*

Just as Chrysler could not rely on FOIA to enjoin the release of exempt documents by the Defense Logistics Agency, plaintiffs here have no cause of action under FOIA to enjoin USDA from releasing the grower list. Even if the list falls under one of the asserted exemptions, 5 U.S.C. § 552(b)(3), (b)(4), and (b)(6), USDA has discretion under FOIA to disclose the lists, assuming there exists no other bar to disclosure. Plaintiffs' only right of action must be found in the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. *Chrysler,* 441 U.S. at 318, 99 S.Ct. at 1726.[2]

## THE PROJECTED RELEASE OF THE GROWER LIST WILL NOT VIOLATE THE APA

Section 10(a) of the APA provides for judicial review of agency action to persons "adversely affected or aggrieved" thereby. Under this section, the Court must:

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ...

5 U.S.C. § 706(2). Plaintiffs contend that the release of the list violates the confiden-

---

**2.** In their original complaint, plaintiffs did not cite the APA as a jurisdictional basis for this suit. On July 10, 1985, plaintiffs cured this deficiency by filing an Amended Complaint.

tiality provisions of the AMAA, and is thus "not in accordance with law". *Id.* Plaintiffs also contend that the grower list is exempt under FOIA, and that defendants' release thereof is "arbitrary, capricious, [and] an abuse of discretion". *Id.* Both of these contentions must fail.

*A. The Release of the List is not Prohibited by the AMAA.*

Plaintiffs argue that the release of the list is prohibited by the AMAA, 7 U.S.C. § 608d. If so, plaintiffs continue, such release would be "not in accordance with law", and would thus violate the APA, 5 U.S.C. § 706(2). As shown below, however, the list was compiled pursuant to 7 U.S.C. § 608c rather than § 608d, so it is not protected by the confidentiality provisions of the latter section. Moreover, even if § 608 applies, its confidentiality provisions do not prohibit the release of the list.

■ Section 608d refers to and encompasses only information furnished by handlers and others to "enable [the Secretary] to ascertain and determine the extent to which such [marketing] agreement or order has been carried out...." 7 U.S.C. § 608d(1). The instant grower list, however, was not prepared to determine if the handlers were in compliance with the marketing orders, but was compiled "for referenda purposes only." Doyle Dec. ¶ 8. Because the names and addresses were obtained only to enable USDA to conduct a referendum on an amendment to a marketing order, *id.* ¶¶ 7–9, the requested information does not fall within the confidentiality provisions of § 608d. This information was obtained pursuant to the Secretary's authority under 7 U.S.C. § 608c[3], which does not provide for any confidentiality. Thus, the AMAA does not prohibit its disclosure.

■ Moreover, even if the list was compiled pursuant to § 608d, as plaintiffs contend, the release is permissible under § 608d(2). That statute provides that

---

**3.** In addition, the regulations which require handlers to submit lists of growers on Form 1–A, 7 C.F.R. §§ 907.107(a), 907.108(a), were promulgated pursuant to the Secretary's statutory authority under § 608c. *See* 19 Fed.Reg.

"[n]othing in this section shall be deemed to prohibit (A) the issuance of general statements based upon the reports of a number of parties to a marketing agreement or of handlers subject to an order, which statements do not identify the information furnished by any one person." 7 U.S.C. § 608d(2). In this case, USDA intends to release a list containing only the names and mailing addresses of orange growers. Doyle Dec. ¶ 7. The list does not identify the particular information furnished by any one handler. *Id.* ¶ 9. This list, therefore, qualifies as a "general statement" which does not identify the information furnished by any particular person, and its release is not prohibited by the AMAA. Thus, the release is "in accordance with law", within the meaning of the APA, 5 U.S.C. § 706(2).

*B. Because the List is not Exempt Under FOIA, It Must be Disclosed by Defendants, and Therefore Its Disclosure is Not Arbitrary, Capricious, or an Abuse of Discretion.*

Plaintiffs contend that the list is exempt from the FOIA disclosure requirements pursuant to 5 U.S.C. §§ 552(b)(3), (b)(4), and (b)(6). If the list falls within any of these exemptions, defendants have discretion to release it. *Chrysler*, 441 U.S. at 294, 99 S.Ct. at 1713. Plaintiffs argue that, in deciding to release the list, defendants have acted arbitrarily and capriciously, and have abused their discretion, in violation of the APA, 5 U.S.C. § 706(2). An analysis of the relevant exemptions, however, compels the conclusion that the list is not exempt under FOIA, and that defendants have no discretion to refuse to release it. *See* 5 U.S.C. § 552(c); *Getman v. N.L.R.B.*, 450 F.2d 670, 677–80 (D.C.Cir. 1971).

*1. FOIA Exemption 3*

■ FOIA exemption 3 permits agency withholding of documents that are:

---

8130, 8140 (1954). And, despite plaintiffs' suggestions to the contrary, nothing on Form 1–A indicates that the information submitted on that Form must remain in confidence.

(3) specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

5 U.S.C. § 552(b)(3). If the withholding statute satisfies either prong (A) or prong (B) of the section, it falls within the coverage of exemption 3. *Irons & Sears v. Dann,* 606 F.2d 1215, 1220 (D.C.Cir.1979), *cert. denied sub nom., Irons & Sears v. Commissioner of Patents & Trademarks,* 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980).

In the present case, plaintiffs contend that the information contained in the grower list was compiled pursuant to 7 U.S.C. § 608d, and that it is exempt from the disclosure requirements because that statute satisfies prong (B) of exemption 3. As previously explained, *supra* part A, the list was not compiled pursuant to § 608d; rather, the information was obtained to conduct a grower referendum pursuant to § 608c. Because the AMAA does not require USDA to keep confidential any information so obtained, exemption 3 does not apply. Even if the information had been obtained pursuant to § 608d, the confidentiality provisions of that section do not prohibit its release. *See* 7 U.S.C. § 608d(2)(A). Therefore, it is clear that the grower list is not shielded from the FOIA disclosure requirements by virtue of exemption 3.[4]

### 2. FOIA Exemption 4

■ FOIA exemption 4 makes disclosure discretionary when the request seeks "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). In order for the list to qualify as exempt under this section, it must constitute (1) commercial or financial information, (2) obtained from a person, and (3) which is privileged or confidential. *Wash-*

*ington Post Co. v. United States Dept. of Health and Human Services,* 690 F.2d 252, 266 (D.C.Cir.1982). Even assuming plaintiffs can prove that the list satisfies requirements (1) and (2), it is clear that it is neither privileged nor confidential. Plaintiffs do not contend that the list is privileged, and the case law demonstrates that it is not confidential.

> Matter is confidential under exemption 4: if disclosure of the information is likely to have either of the following effects: (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

*National Parks & Conservation Association v. Morton,* 498 F.2d 765, 770 (D.C.Cir. 1974). Such a two prong test is necessary because this exemption protects the interests of (1) the government and (2) the individual who supplied the information to the government. *Id.* at 767. Because here the government does not object to the release of the list, and because the government can continue to obtain this information from several sources, Doyle Dec. ¶ 6, the Court focuses only on prong (2) of the test enunciated in *National Parks, supra.*

Plaintiffs have made no showing that the release of the list will cause *substantial* harm to the competitive positions of the plaintiff handlers. Plaintiffs' allegations of harm caused by Mr. Pecosolido's solicitation is at best speculative. Moreover, anyone can discover the names and addresses of growers, (the only information on the list), by visiting orange groves, and by other obvious means. Wilson Dec. ¶¶ 7–9; Weisman Dec. ¶¶ 4–8. Plainly, the release of the list cannot cause substantial harm to plaintiffs. The list, therefore, is not covered by FOIA exemption 4.

---

**4.** In light of this result, the Court need not consider defendants' additional argument that, because § 608d provides the Secretary with too much discretion, it is not even the type of stat-

ute contemplated by exemption 3. *See American Jewish Congress v. Kreps,* 574 F.2d 624 (D.C. Cir.1978).

### 3. FOIA Exemption 6

■ USDA has discretion to disclose "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Assuming the grower list is a "similar file" within the meaning of this section, *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 596, 602, 102 S.Ct. 1957, 1959, 1961, 72 L.Ed.2d 358 (1982), the Court must consider whether the release of the list would constitute a clearly unwarranted invasion of privacy. 5 U.S.C. § 552(b)(6).

In this case, plaintiffs assert that the release of the grower list will infringe their privacy by divulging their "private" customer lists.[5] It is well-established, however, that neither corporations nor business associations possess protectible privacy interests. *E.g. Sims v. Central Intelligence Agency*, 642 F.2d 562, 572 n. 47 (D.C.Cir. 1980); *National Parks & Conservation Association v. Kleppe*, 547 F.2d 673, 685 n. 44 (D.C.Cir.1976). Thus plaintiffs, all of whom are either corporations or business associations involved in the handling of oranges, have no protectible privacy interests. Accordingly, this material does not fall within exemption 6 of FOIA, 5 U.S.C. § 552(b)(6).

### C. Even Assuming the List is Exempt Under FOIA, Defendants Have Not Abused Their Discretion by Deciding to Release It.

■ As demonstrated above, the list of growers' names and addresses compiled by USDA is not exempt from the disclosure requirements of FOIA. Defendants are therefore obligated to release it. 5 U.S.C. § 552(c); *Getman v. N.L.R.B.*, 450 F.2d 670, 677–80 (D.C.Cir.1971). Under these circumstances, where disclosure is obligated, the release of the list cannot violate the APA. However, even assuming the list satisfies any of the FOIA exemptions, the defendants clearly acted within their discretion in deciding to release it. *See* 5 U.S.C. § 706(2).

As noted, the defendants have discretion to release materials which are exempt from FOIA. *Chrysler*, 441 U.S. at 294, 99 S.Ct. at 1713. The Court's standard of review under the APA is very limited:

[T]he court must consider whether the decision was based on a consideration of relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). USDA, therefore, must only demonstrate a rational basis for its decision to release the list. *International Ladies' Garment Union v. Donovan*, 722 F.2d 795, 814 (D.C.Cir.1983).

In the present case, the analysis of the applicability of the FOIA exemptions to the list, *see supra* part B, demonstrates USDA's basis for releasing it. Clearly the determination to release the list was not an arbitrary or capricious decision—it was the right decision. Moreover, even if exempt, the release of the list will effectuate the purposes of the AMAA. Mr. Pescosolido intends to use the list to increase the flow of information among growers. Pescosolido Dec. ¶ 7. The growers must vote on referenda, so such increased information can significantly contribute to this democratic purpose. Clearly there has been no abuse of discretion in making the list available to the public. Defendants' decision to release the list, therefore, does not violate the APA, 5 U.S.C. § 706(2).

### CONCLUSION

Although plaintiffs have standing to challenge USDA's decision to release the grower list, their only right of action is under the Administrative Procedure Act, 5 U.S.C. § 706(2). *Chrysler Corp. v. Brown*, 441 U.S. 281, 318, 99 S.Ct. 1705, 1726, 60 L.Ed.2d 208 (1979). It is clear, however, that the APA was not violated in this case.

---

**5.** Clearly the handler plaintiffs have no standing to assert the privacy interests of the growers.

Under the APA, the Court must set aside any conclusions by defendants that are "not in accordance with law"; or which constitute "an abuse of discretion". 5 U.S.C. § 706(2). Because the release of the list is not prohibited by the AMAA, and because it is not exempt from FOIA, defendants are obligated to disclose it. *Getman v. N.L.R.B.*, 450 F.2d 670, 677–80 (D.C.Cir.1971). In fulfilling their obligations, defendants certainly acted "in accordance with law". Even if the list is exempt under FOIA, defendants clearly did not abuse their discretion to release it. *See Chrysler*, 441 U.S. at 294, 99 S.Ct. at 1713. Thus, defendants' decision does not violate the APA. The Court has issued an order of even date herewith granting defendants' and defendant-intervenor's motions for summary judgment, and terminating the temporary restraining order in this case.

### ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 11th day of July, 1985,

ORDERED that plaintiffs' motion for summary judgment be, and the same is hereby denied; and it is

FURTHER ORDERED that defendants' motion to dismiss be, and the same is hereby denied; and it is

FURTHER ORDERED that defendants' motion for summary judgment be, and the same is hereby granted; and it is

FURTHER ORDERED that defendant-intervenor's motion for summary judgment be, and the same is hereby granted; and it is

FURTHER ORDERED that the temporary restraining order which the Court entered in this case on June 28, 1985, be, and the same is hereby vacated; and it is

FURTHER ORDERED that this case shall stand dismissed from the dockets of this Court.