# Release of Information Collected Under the Agricultural Marketing Agreement Act of 1937

A provision in the appropriations act for the Department of Agriculture relating to the release of information collected under the Agricultural Marketing Agreement Act of 1937 does not restrict the use of such information in the Department's rulemaking proceedings, in its prosecution of enforcement proceedings, or in its defense of regulatory actions under the 1937 Act. The restriction was intended solely to limit the Department's discretionary release of information to members of the public in response to Freedom of Information Act or other requests.

January 15, 1987

MEMORANDUM OPINION FOR THE GENERAL COUNSEL,
DEPARTMENT OF AGRICULTURE

This responds to your request for our opinion on the effect of a provision in the current appropriations act for the Department of Agriculture (USDA). The provision in question relates to the release of information collected under the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. §§ 601 *et seq.* (1937 Act), and reads as follows:

> None of the funds provided in this Act may be expended to release information acquired from any handler under the Agricultural Marketing Agreement Act of 1937, as amended: *Provided*, That this provision shall not prohibit the release of information to other Federal agencies for enforcement purposes: *Provided further*, That this provision shall not prohibit the release of aggregate statistical data used in formulating regulations pursuant to the Agricultural Marketing Agreement Act of 1937, as amended: *Provided further*, That this provision shall not prohibit the release of information submitted by milk handlers.

Pub. L. Nos. 99–500, title VI, § 631, 100 Stat. 1783, 1783–30 (1986) and 99–591, title VI, § 631, 100 Stat. 3341, 3341–30 (1986) (collectively, § 631).

You wish to know whether and how § 631 affects USDA's ability to use information collected by it under the 1937 Act in connection with enforcement and rulemaking proceedings initiated by it under the 1937 Act, as well as in judicial or administrative challenges to USDA actions initiated by private

9

parties. The particular examples with respect to which you seek our guidance all involve situations in which the information in question might be introduced by USDA as evidence in connection with its own rulemaking activities, its prosecution of enforcement proceedings, and its defense of regulatory actions taken under the marketing order program established by the 1937 Act.

For reasons set forth in greater detail below, we believe that § 631 does not restrict USDA's ability to release information acquired from handlers under the 1937 Act in the course of its administration and enforcement of that Act, regardless of whether the information is relevant in an administrative or a judicial context, and regardless of whether USDA is in the position of a plaintiff or a defendant. Rather, § 631 was intended solely to limit USDA's discretionary release of information to members of the public, outside of the enforcement context, in response to requests under the Freedom of Information Act or otherwise.

In interpreting a statute, we look first to its text. Though couched in terms of a limitation on the expenditure of appropriated funds, as a practical matter § 631 functions as a direct restriction on USDA's release of information acquired from handlers under the 1937 Act. On the other hand, precisely because § 631 is a USDA appropriations limitation, it would seem to have no effect on other agencies' ability to use or disseminate the information in question.

There are three provisos to § 631's restriction on the release of information, only one of which is relevant here: the section explicitly does not prohibit release of information to "other Federal agencies for enforcement purposes."[1] We believe that it would be anomalous to suppose that Congress intended to allow other federal agencies freely to use information collected by USDA for their own enforcement purposes, while at the same time denying a similar freedom to USDA itself. Accordingly, we think that the ambiguously worded "enforcement" exception in § 631 must be read to reflect and incorporate Congress' expectation that the section would not restrict USDA's ability to use any information collected by it under the 1937 Act to carry out its own authorized enforcement functions.

Yet another feature of the statutory language supports this narrow reading of § 631's intended scope. This is the provision's use of the term "release" to describe what USDA may not do with information collected by it, as opposed to a broader term such as "disclose." The use of the term "release" suggests a concern with USDA's discretionary dissemination of information to the public, rather than an intent to inhibit authorized law enforcement activities. Where Congress has imposed restrictions on a federal agency's use of information in its possession, it has generally enacted laws prohibiting "disclosure" of such

_____

[1] The wording of this proviso is somewhat ambiguous, because it is not clear whether another agency's "enforcement purposes" — as distinct from USDA's own enforcement purposes — will justify USDA's release of information. In any event, because § 631 restricts only USDA's ability to release information, this provision would not inhibit another agency to which the information was released by USDA under the proviso from in turn releasing it to nongovernmental parties in the course of its own authorized activities

10

information.[2] Moreover, although Congress has on occasion imposed restrictions on an agency's ability to disclose information in its possession to other agencies, we would not, in the absence of a very clear indication in the statutory language or legislative history, infer an intent to restrict an agency's ability itself to use information properly obtained by it to administer and enforce a statute for which it is responsible.

The legislative history of § 631 contains no such indication. To the contrary, it confirms that this section was not intended to restrict USDA's use of information in the enforcement context. The impetus for imposing a legislative limitation on USDA's discretionary release of information collected under the Act to private parties seems to have come in the first instance from the district court's decision in *Ivanhoe Citrus Ass'n* v. *Handley*, 612 F. Supp. 1560 (D.D.C. 1985). *Handley* was a "reverse" FOIA case in which California orange growers sought to prevent USDA from releasing certain lists of grower names and addresses collected by USDA under the Act. The court ruled against the growers, holding that the grower lists in question were not exempt from disclosure under FOIA, and that USDA had not abused its discretion in releasing the lists pursuant to a FOIA request.

In *Handley*, the court held, *inter alia*, that lists of names and addresses were not covered by a provision in the 1937 Act requiring that certain information collected under that Act be kept confidential. *See* 7 U.S.C. § 608d(2). Presumably, had this confidentiality provision in the 1937 Act applied to the lists in question, FOIA would have provided no basis for releasing them to a private party. *See* 5 U.S.C. § 552(b)(3). On the other hand, the confidentiality provision of the 1937 Act would have posed no bar to USDA's use of protected information for its own enforcement purposes under the Act, because it provides that protected information may be disclosed "in a suit or administrative hearing brought at the direction, or upon the request, of the Secretary of Agriculture, or to which he or any officer of the United States is a party, and involving the marketing agreement or order with reference to which the information so to be disclosed was furnished or acquired." 7 U.S.C. § 208d(2).

In July 1985, only a few days after the *Handley* decision was announced, the House Agriculture Committee reported out an amendment to the confidentiality provision of the 1937 Act. According to the Committee's report, the amendment was intended to extend the coverage of the confidentiality provision to the kind of information at issue in *Handley*. *See* H.R. Rep. No. 271, 99th Cong., 1st Sess., pt. 1, at 197 (1985) ("The amendment would overturn the legal basis used by the [*Handley*] court and the Administration to justify release of growers['] names and addresses. . . ."). Notwithstanding this apparent intention, however, the amendment reported by the House Agriculture Committee and ulti-

---

[2] *See, e.g.,* 18 U.S C. § 1905 (generally prohibiting agency "disclosure" of confidential information and trade secrets); 15 U S.C. § 2055(b)(1) (prohibiting "disclosure" by the Consumer Product Safety Commission); 5 U.S.C. § 1401 (permitting "disclosure" of confidential information and trade secrets received by the National Highway Traffic Safety Administration under the National Traffic and Motor Vehicle Safety of Act only "when relevant in any proceeding under this title"). *See also* Office of Legal Policy, U.S. Department of Justice, *Freedom of Information Act Case List* 317–23 (1986) (discussion of "Exemption 3" statutes).

11

mately enacted by Congress in December 1985 was worded so as to bring within the ambit of the confidentiality provision only "trade secrets and commercial or financial information." Pub. L. No. 99–198, § 663, 99 Stat. 1631 (1985).

Almost immediately, questions were raised as to whether grower lists would be considered "trade secrets and commercial or financial information." (Indeed, the *Handley* decision had explicitly held that they were not, at least for purposes of the FOIA's (b)(4) exemption. 612 F. Supp. at 1566.) It thus appeared that the 1985 amendment to the 1937 Act had not accomplished the Agriculture Committee's stated objective of protecting the grower lists at issue in *Handley* from FOIA disclosure, and that further legislative steps would be necessary.

When viewed against this background, § 631 appears to represent a second attempt to effect the desired limitation on USDA's discretion to release information collected from handlers under the 1937 Act in response to FOIA requests. That this new restriction on USDA was imposed through an appropriations act provision rather than by a second amendment to the confidentiality provision of the 1937 Act itself is probably best explained as a phenomenon of the modern legislative process: in recent years Congress has proven itself increasingly willing to use the relatively expeditious appropriations process to enact substantive law, rather than go through the arduous, time-consuming and often dangerous process of amending the United States Code.

As is often the case in such situations, the current USDA appropriations act has no formal legislative history that would confirm or refute our hypothesis about the connection between § 631 and the confidentiality provision of the 1937 Act. Nonetheless, we believe that this hypothesis offers the most plausible explanation of Congress' intent in enacting § 631. Accordingly, we believe § 631 should be interpreted in light of the 1937 Act's express intention to allow USDA to use information collected under the Act "in a suit or administrative hearing brought at the direction, or upon the request, of the Secretary of Agriculture, or to which he or any officer of the United States is a party." 7 U.S.C. § 608d(2).

In sum, we believe that § 631 does not limit USDA's ability to release information in the context of exercising its enforcement and administrative responsibilities under the 1937 Act. Accordingly, it would appear that § 631 poses no bar to USDA's release of information to governmental or nongovernmental parties in any of the specific situations described in your letter.

As a final point, we note that because the restriction contained in § 631 was enacted as part of an appropriations act, there is a presumption that Congress intended it to be effective only for the fiscal period covered by that act. None of the generally accepted countervailing indications of permanence are present in either the text or nature of the provision. *See* General Accounting Office, *Principles of Federal Accounting Law* 2–34 to 2–37 (1982).[3] Accordingly, it is

---

[3] A provision in an appropriations act will be regarded as permanent if the language used or the nature of the provision makes it clear that such was of the intention of Congress. *Principles, supra,* at 2–34. Section 631 contains no language making clear Congress' intention to extend the provision's life beyond that of the

Continued

12

our opinion that the restriction contained in § 631 will have no effect beyond the end of the fiscal period covered by the current USDA appropriations act, unless it is reenacted by Congress.

SAMUEL A. ALITO, JR.
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] (. . . continued)
appropriations act in which it appears, and the nature of the restriction imposed does not necessarily imply intended permanence. The phrasing of a provision as an affirmative authorization rather than a restriction on the use of funds is generally regarded as an indication that Congress intended it to be permanent. *Id.* at 2–37. But § 631 is couched in terms of a limitation on USDA's use of funds rather than as a direct restriction on the release of information. Finally, the inclusion of a provision in the United States Code, another common indication of intended permanence, *id.* at 2–36, is missing here.