**IRONS AND SEARS, Appellant,**

v.

**C. Marshall DANN.**

**No. 78–1200.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 19, 1979.

Decided July 19, 1979.

Rehearing Denied Aug. 31, 1979.

Richard H. Stern, Washington, D. C., for appellant. Edward S. Irons, Washington, D. C., was on the brief for appellant.

Thomas G. Corcoran, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry, Peter E. George, and Ann S. DuRoss, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before WRIGHT, Chief Judge, and ROBINSON and ROBB, Circuit Judges.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Chief Judge:

Appellant seeks access under the Freedom of Information Act (FOIA)[1] to all decisions of the Patent and Trademark Office (PTO) disposing of requests by would-be patentees for a filing date earlier than the one initially assigned to their applications. The agency granted access to a limited portion of these decisions and declared that the rest were not reachable under the FOIA. Appellant filed suit to secure the documents withheld, and the District Court substantially affirmed the PTO's position. We find ourselves in accord in significant respects with the District Judge's conclusion that the bulk of the material sought is

exempt from the Act. We remand, however, because we believe that one category of decisions as to which FOIA access was apparently denied is in fact fully subject to the Act. While limited, this remand may have the added benefit of permitting the agency to take a second look at its discretionary decision to release certain decisions while maintaining in secrecy others that appear in material respects to be indistinguishable.

I

The patent process is commenced, not surprisingly, by the filing of a patent application. Pursuant to 35 U.S.C. § 111 (1976) such an application must include a number of items, among them a specification describing the invention and claiming the subject matter which the applicant regards as his, a drawing (where appropriate), an oath, the signature of the applicant, and the required fee.[2] An application's filing date is the date on which the entire application was received by the Patent and Trademark Office. If an application is not complete at the time of initial filing, it is not assigned a filing date. Instead, the applicant is notified of the deficiency and the documents that were received by the PTO are in effect held in abeyance. If the applicant chooses to cure the defects or omissions he may do so, and his application will be given a filing date that corresponds to the date on which it was completed.[3]

In the course of patent examination proceedings the patent application's filing date may play a critical role. In fact, the grant or denial of a patent may in some circumstances turn upon the filing date assigned to the application.[4] In light of this, appli-

---

1. 5 U.S.C. § 552 (1976).

2. See 35 U.S.C. §§ 111, 112, 113, 115 (1976).

3. See generally Affidavit of Rene D. Tegtmeyer, filed March 11, 1976, Appendix (App.) 19, 22–25. See also 37 C.F.R. §§ 1.53, 1.55(a) (1978).

4. 35 U.S.C. § 102 (1976) provides that a person shall be entitled to a patent unless:
 (b) the invention was patented or described in a printed publication in this or a foreign

country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or
 * * * * * *
 (d) the invention was first patented or caused to be patented, or was the subject of an inventor's certificate, by the applicant or his legal representatives or assigns in a foreign country prior to the date of the application for patent in this country on an applica-

cants who have received a deferred filing date sometimes object to the date assigned to their application and petition the Commissioner of Patents and Trademarks for an earlier one. It is the decisions of the Commissioner and his assistants disposing of these petitions which are the subject of the instant litigation.[5]

■ Patent applications may be grouped into three categories.[6] First are pending applications, which are exactly what the label suggests—applications that are either on the brink of the examination process or already enmeshed in examination proceedings. Second are applications which have culminated in the issuance of a patent. These are called patent files. And third are applications with regard to which proceedings have terminated without the issuance of a patent, either because of an unfavorable PTO determination or because the applicant has for some reason decided not to pursue the matter. These are called abandoned patent applications. Pursuant to 35 U.S.C. § 122 (1976) categories one and three

are maintained in confidence by the PTO.[7] Documents in category two, patent files, are public records open for inspection.[8]

■ In the spring of 1975, appellant, a law firm that seems to devote considerable resources to FOIA litigation against the PTO,[9] filed a request for all decisions of the Commissioner granting or denying petitions for earlier filing dates and all indices pertaining to such decisions.[10] By letter of April 23, 1975 the PTO granted the request in part and denied it in part.[11] More specifically, the agency agreed to make available (1) in their entirety all decisions *denying* earlier filing dates contained in *patent files,* and (2) after deletion of confidential material all decisions *denying* earlier filing dates contained in *abandoned applications.* In addition, the PTO provided indices of the decisions to which access was granted. The agency declined to release decisions *denying* an earlier filing date that pertain to *pending applications* as well as all decisions *granting* earlier filing dates.[12] Appellant

tion for patent or inventor's certificate filed more than twelve months before the filing of the application in the United States[.]

5. Samples of such decisions are reproduced at App. 45–50. Additional samples appear in an addendum to the Appendix.

6. *See Sears v. Gottschalk,* 502 F.2d 122, 124 (4th Cir. 1974), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); Tegtmeyer Affidavit, *supra* note 3, App. 25.

7. *See Sears v. Gottschalk, supra* note 6, 502 F.2d at 124, 128–131. *See also* 37 C.F.R. §§ 1.14(a) & (b) (1978).

8. *See* 37 C.F.R. § 1.11 (1978).

9. *See Irons v. Gottschalk,* 179 U.S.App.D.C. 37, 548 F.2d 992 (1976), *cert. denied,* 434 U.S. 965, 98 S.Ct. 505, 54 L.Ed.2d 451 (1977); *Sears v. Gottschalk, supra* note 6; *Irons v. Schuyler,* 151 U.S.App.D.C. 23, 465 F.2d 608, *cert. denied,* 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972).

10. The original request is reproduced at App. 30–33. A letter clarifying that request appears at App. 35.

11. App. 36–37.

12. The agency's rationale for each facet of its response is not entirely clear. Its initial re-

sponse states that decisions granting an earlier filing date "are not available for inspection and have not been indexed since they are not 'final opinions' in the adjudication of cases. See 5 U.S.C. § 552(a)(2). Those decisions which relate to pending applications are not available for inspection for the further reason that they are specifically exempted from disclosure by 35 U.S.C. § 122." App. 37. On its face this is a rather curious and incomplete statement. In the first place, it provides no justification for the PTO's determination that decisions denying an earlier filing date with regard to abandoned application files should be excerpted prior to their disclosure. Further, it fails to address the possibility that decisions granting an earlier filing date for abandoned applications and for applications that have issued as patents might be disclosable as reasonably described records under 5 U.S.C. § 552(a)(3) if not covered by the disclosure requirement of § 552(a)(2). The Tegtmeyer Affidavit, *supra* note 3, gives a somewhat expanded *post hoc* rationale for the agency response which cures some of these defects: It asserts that decisions lodged in abandoned applications are exempt from disclosure under 35 U.S.C. § 122 just like those lodged in pending files and suggests that the agency's decision to release excerpted portions of some of these decisions notwithstanding their exemption was a voluntary one in no way

appealed administratively,[13] and the agency adhered to its previous position.[14]

On August 27, 1975 appellant filed suit in the District Court seeking disclosure of all filing date decisions withheld, along with pertinent indices.[15] The District Court granted summary judgment in favor of the PTO on January 23, 1978.[16] The court found that Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3) (1976), in conjunction with the provision of the patent statute requiring that patent applications be maintained in confidence, 35 U.S.C. § 122 (1976), shields the bulk of the decisions in suit from disclosure under the FOIA. This appeal followed.

## II

■ The FOIA combines a strong disclosure mandate with nine rather specific exemptions.[17] It is a commonplace that the former is to be generously construed while the latter are narrowly circumscribed.[18] The key question posed by the instant litigation is whether patent applications and information concerning them qualify by virtue of 35 U.S.C. § 122 as materials "specifi-

cally exempted from disclosure by statute" for purposes of the third exemption to the FOIA, 5 U.S.C. § 552(b)(3), and thus may be kept in confidence by the PTO. The District Court held that they do so qualify, and we concur.[19]

■ Exemption 3 excludes from the coverage of the FOIA matters that are

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]

5 U.S.C. § 552(b)(3). The proviso that makes up the major part of this exemption was added to it in 1976 by the Government in the Sunshine Act.[20] Congress' goal was to overrule legislatively the Supreme Court's decision in *Administrator, FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), which had given an expansive reading to the version of Exemption 3 then in force.[21] The amended text

compelled by the FOIA. In large measure we uphold the interpretation and analysis which underlies this explanation.

13. App. 38–40.

14. App. 41–44.

15. The complaint is reproduced at App. 1. Appellant also sought in unexpurgated form those decisions which had been excerpted.

16. The District Court's Memorandum and Order appear respectively at App. 79 and 84.

17. 5 U.S.C. § 552(a) contains the disclosure requirements. The exemptions are set forth in 5 U.S.C. § 552(b).

18. *See, e. g., NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 220–221, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–362, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

19. Appellant has also raised a host of procedural contentions relating to various discovery rulings and controversies below. We have carefully considered these contentions and conclude that they are lacking in merit. Accordingly, our opinion treats only the substantive FOIA issues raised by this appeal.

20. Pub. L. No. 94–409, 90 Stat. 1241, 1247 (1976). Previously, Exemption 3 simply shielded material "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3) (1970).

21. The *Robertson* Court reasoned that there was no indication that Congress intended to exclude any existing nondisclosure statute from Exemption 3 and declined to infer a series of selective repeals by implication. Instead, it concluded that Congress' response to the problems posed by existing nondisclosure statutes "was to permit the numerous laws then extant allowing confidentiality to stand[.]" 422 U.S. at 266, 95 S.Ct. at 2148. The Court proceeded to find that § 1104 of the Federal Aviation Act of 1958, 49 U.S.C. § 1504 (1976), came within Exemption 3. That section now provides in relevant part:

Any person may make written objection to the public disclosure of information contained in any application, report, or document filed pursuant to the provisions of this chapter or of information obtained by the Board or the Secretary of Transportation, pursuant to the provisions of this chapter, stating the grounds for such objection. Whenever such objection is made, the Board or Secretary of Transportation shall order

and its legislative history make clear that Congress did not want the exemption to be triggered by every statute that in any way gives administrators discretion to withhold documents from the public.[22] On the contrary, Congress intended exemption from the FOIA to be a legislative determination and not an administrative one.[23] It provided that only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption. But it did provide that such statutes would be sufficient.[24]

With this as background, we turn to Section 122 of the Patent Act, which provides:

Applications for patents shall be kept in confidence by the Patent and Trademark Office and no information concerning the same given without authority of the applicant or owner unless necessary to carry out the provisions of any Act of Congress or in such special circumstances as may be determined by the Commissioner.

35 U.S.C. § 122 (1976). In *Irons v. Gottschalk,* 179 U.S.App.D.C. 37, 548 F.2d 992 (1976), *cert. denied,* 434 U.S. 965, 98 S.Ct. 505, 54 L.Ed.2d 451 (1977), a panel of this court assumed that Section 122 was an express statutory exemption for purposes of the prior version of Exemption 3.[25] In a footnote to that decision we made reference to the changes wrought by Congress via the Government in the Sunshine Act and expressed the view that those changes would not alter the outcome of that case.[26] While

indicative of that panel's view of the new statute, we do not think the footnote in *Irons,* appended as it was to a decision in a case argued under the prior statute, is properly elevated to a *holding* binding upon us today. Thus it is on an at least formally clean slate that we now consider the matter.

We recognize at the outset that Section 122 fails to satisfy fully the first part of the proviso in Exemption 3. The Patent Act simply is not a statute that requires nondisclosure "in such a manner as to leave *no* discretion on the issue." (Emphasis added.) Rather it permits the Commissioner to release information concerning patent applications when he finds there exist the appropriate "special circumstances." But the mere presence of some residual administrative discretion does not take Section 122 out of Exemption 3. It is quite clear that the requirements set forth in that exemption are phrased in the disjunctive, and it is therefore sufficient if either prong of the proviso is satisfied. We believe that Section 122 does satisfy the second prong because it "refers to particular types of matters to be withheld"—namely, patent applications and information concerning them.[27] Moreover, taking a somewhat broader view, we would in any event be extremely reluctant to impute to Congress an intent to eliminate the long-standing confidentiality accorded to patent applications absent rather unambiguous indications that this is what Congress really

such information withheld from public disclosure when, in their judgment, a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public. * * *

The Conference Committee report on the final version of the 1976 Exemption 3 amendments states: "The conferees intend this language to overrule the decision of the Supreme Court in *Administrator, FAA v. Robertson* * * *." H.R. Rep. No. 94-1441, 94th Cong., 2d Sess. 25 (1976) (Conference Report).

22. *See American Jewish Congress v. Kreps,* 187 U.S.App.D.C. 413, 417-419, 574 F.2d 624, 628-630 (1978); *Seymour v. Barabba,* 182 U.S. App.D.C. 185, 186, 559 F.2d 806, 807 (1977).

23. *See generally Lee Pharmaceuticals v. Kreps,* 577 F.2d 610, 614-618 (9th Cir. 1978); *American Jewish Congress v. Kreps, supra* note 22, 187 U.S.App.D.C. at 417 n.34, 574 F.2d at 628 n.34.

24. *See Seymour v. Barabba, supra* note 22.

25. *See also Sears v. Gottschalk, supra* note 6.

26. *Irons v. Gottschalk, supra* note 9, 179 U.S. App.D.C. at 39 n.3, 548 F.2d at 994 n.3.

27. *Id. See also Lee Pharmaceuticals v. Kreps, supra* note 23, 577 F.2d at 615-617. In that decision the Ninth Circuit reached a conclusion similar to our own on the relationship between § 122 and Exemption 3.

wanted. There can be little doubt that a holding permitting FOIA access to such applications would jeopardize the patent system by permitting competitors to divine or actually to secure information concerning inventions prior to the issuance of a patent.[28] Indeed, were such access routinely to be permitted would-be applicants might be deterred from seeking patent protection in the first place. The need for confidentiality, in short, seems close to the core of the patent system. We decline to infer an intent to abridge that confidentiality from legislative materials that in no way imply it.

In sum, we are simply not faced today with the kind of blanket authorization to keep secret which was at issue in *Robertson, supra*, and which under the Government in the Sunshine Act is clearly to yield to the FOIA's disclosure requirement. Instead we are presented with a statute that (1) affirmatively requires nondisclosure (2) of rather particular sorts of material (3) subject only to a discretionary but apparently narrow "special circumstances" exception which (4) has not historically been used to permit anything resembling general access to the materials in suit and (5) could not be so used without doing violence to the statutory scheme. In our judgment these are precisely the sorts of factors on which Congress intended the application of Exemption 3 to turn.

## III

Having determined that Section 122 is an Exemption 3 nondisclosure provision, we now turn to the effect of that section on

the documents in suit. That it shields patent applications themselves is obvious from the text, and we think it equally clear that this applies to pending and abandoned applications alike.[29] But appellant has not requested actual patent applications, whether pending or abandoned. It seeks only PTO decisions granting or denying petitions for earlier filing dates. We must, therefore, decide whether these administrative decisions qualify as "information concerning" patent applications for purposes of Section 122.

Appellant invites us to conclude that the materials at issue here do not so qualify and, in the alternative, suggests that even if they do they must be released once those portions reasonably deemed confidential have been deleted. We decline to follow appellant's lead on both counts. The first, we believe, is foreclosed by statute. It would strain language to the breaking point to conclude that decisions concerning the filing date of patent applications are not "information concerning" those applications. Nor is the conclusion to which the statutory language leads us an irrational one. Earlier filing date decisions identify the applicant, the invention, and the filing date. As a result, their disclosure would lead to some of the same harms as would the disclosure of the applications themselves.

Appellant's second suggestion is somewhat more attractive. Indeed, it seems superficially to offer a means of reconciling the disclosure mandate of the FOIA with the exigencies of the patent system.[30] Nonetheless, we are constrained

---

**28.** *See Lee Pharmaceuticals v. Kreps, supra* note 23, 577 F.2d at 616.

**29.** The Fourth Circuit held that § 122 applies to both pending and abandoned applications in *Sears v. Gottschalk, supra* note 6, 502 F.2d at 128–131. We implicitly followed that decision in *Irons v. Gottschalk, supra* note 9, 179 U.S. App.D.C. at 40, 548 F.2d at 995, and the Ninth Circuit followed suit in *Lee Pharmaceuticals v. Kreps, supra* note 23. We aware of no reason to adopt a different course now. On the contrary, we find the Fourth Circuit's reasoning fully persuasive.

**30.** A rule of partial deletion was chosen by this court in *Irons v. Gottschalk, supra* note 9, to achieve just such a reconciliation. There appellant had requested all unpublished manuscript decisions of the Patent Office—a category of documents that would include some that were reachable under the FOIA and others that were exempt under § 122 and Exemption 3. Relying in part on *Vaughn v. Rosen*, 157 U.S. App.D.C. 340, 484 F.2d 820 (1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), we concluded:

Those portions of the decisions which contain protected information can be excised in

to reject it. Congress seems to have intended to draw a bright line shielding from disclosure *all* information concerning patent applications. Had it wanted to insulate only some information concerning them, or otherwise to inaugurate a regime of selective excision, it could easily have so specified. Instead, it enacted a flat prohibition on disclosure which we do not feel free to ignore.[31] Accordingly, we conclude that the documents in suit are exempt *in toto* insofar as they relate to pending or abandoned patent applications.

## IV

 We have restricted our discussion thus far to those of the PTO's early filing date decisions that relate to pending or abandoned patent applications. Still unaddressed is the proper treatment of those decisions that relate to applications which have issued as patents. Such decisions are, of course, contained in files that are open for public inspection.[32] Accordingly, it would be difficult to contend that they are nonetheless insulated from the FOIA by virtue of Section 122 and Exemption 3.[33] Indeed, to assert that a document in a public file is exempt from the Act because its disclosure is specifically prohibited by statute would make little sense. Thus we conclude that the FOIA applies with full force to filing date decisions in this category.

As to one group of these decisions—those denying an earlier filing date—the PTO has agreed to provide access as well as an index,[34] and appellant is apparently satisfied. The disposition with regard to the other group—decisions granting an earlier filing date—is considerably more muddled. The PTO appears to have denied FOIA access,[35] and the District Court opinion fails to discuss the matter.[36] Appellant's brief does not focus on this group of decisions, and the agency's submissions are similarly uninformative. It may be that the *status quo* with regard to these decisions is satisfactory to appellant in light of their location in public files. On the other hand, the fact of satisfactory access does not appear in the materials before us, and it is at least a fair inference from what we do have that appellant seeks something more.[37] Accordingly, we believe it necessary to remand so that the District Court can determine the status of these documents and take appropriate steps to make sure that the requirements of the FOIA are complied with.

One of two provisions of the Act may govern this group of decisions. The first is Section 552(a)(2), which requires agencies to make available and index

order that the non-exempt portions can be disclosed. Extending this reasoning to entire volumes, we find that the volumes cannot be denied the appellant *in toto* solely on the ground that the volumes contain exempt information. Again, the exempt portions of the volumes can be removed prior to disclosure to the appellant.

179 U.S.App.D.C. at 41, 548 F.2d at 996. We proceeded to remand to the District Court for a determination of which materials were exempt.

**31.** Appellant contends that the "segregability clause" of the FOIA requires us to order the sort of selective deletion it seeks. That clause provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). We have no doubt that were we to conclude that a portion of the documents in suit were not exempt, the proper result would be to order release of expurgated versions. But since we conclude that § 122 exempts the PTO's earlier filing date decisions

in their entirety, the segregability clause has no application to the present case.

**32.** *See* text at note 8 *supra.*

**33.** The possibility that patent files as well as pending and abandoned applications might fall within the purview of § 122 is raised in *Irons v. Gottschalk, supra* note 9, 179 U.S.App.D.C. at 40, 548 F.2d at 995, and *Sears v. Gottschalk, supra* note 6, 502 F.2d at 128. Neither opinion, however, stands for the proposition that patent files would thereby come within FOIA Exemption 3.

**34.** App. 36.

**35.** App. 37. *See* note 12 *supra.*

**36.** App. 81–82.

**37.** It is certainly conceivable that locating the kinds of decisions appellant seeks in public patent files would be so great a burden as to make their availability all but meaningless.

(A) final opinions * * * made in the adjudication of cases;

(B) those statements of policy and interpretations which * * * are not published in the Federal Register; and

(C) administrative staff manuals and instructions to staff that affect a member of the public[.]

The second is Section 552(a)(3), which provides:

Except with respect to the records made available under paragraphs (1) and (2) of this subsection [552(a)], each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules * * *, shall make the records promptly available * * *. * * *

If the former applies, the agency's responsibilities are at an end once it provides a reasonable index of the requested decisions and makes the files containing them available. If the latter is apposite, the agency need not make an index, but it must produce the actual documents whenever a satisfactory request is made.

The District Court held that decisions granting an earlier filing date do not, standing alone, come within Section 552(a)(2).[38] It provided no reasons for this conclusion, and in our judgment the issue is not free from doubt. On the contrary, decisions granting earlier filing date petitions do finally determine a distinct issue in the adjudication of patent cases—whether the filing date assigned was appropriate. They seem to give reasons for that determination and could in many ways provide a glimpse of precisely the sorts of "secret law" which

it was one purpose of the FOIA to make available.[39] Indeed, if the consequence of affirming the District Court holding with regard to Section 552(a)(2) were to render these decisions secret, we might well be constrained to reverse, recognizing full well that this would bring us onto waters in some sense uncharted.[40] In fact, however, this is not the consequence, as is detailed below, and we are content to affirm, saving for another day an exploration of what sorts of decisions of collateral issues may be final orders for Section 552(a)(2) purposes.

Our disposition leaves the District Court with two broad possibilities. It may conclude that the decisions at issue here, although not themselves within Section 552(a)(2), must nonetheless be indexed as part of an index required for the PTO decisions that actually grant patents. These latter decisions presumably fit within Section 552(a)(2). Alternatively, if the District Court concludes that decisions disposing of earlier filing date petitions are neither directly nor derivatively within the Section 552(a)(2) indexing requirement, it must order disclosure pursuant to Section 552(a)(3) where appropriate.[41]

### V

In sum, we find the documents at issue to be exempt from the FOIA insofar as they relate to pending and abandoned applications and fully subject to that Act insofar as they relate to applications that have issued as patents. As to the latter, we remand for a determination of the proper disposition of those decisions (if any) as to

38. App. 83.

39. *See* Davis, *The Information Act: A Preliminary Analysis*, 34 U.Chi.L.Rev. 761, 797 (1967); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152–153, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

40. The problem is that the decisions in suit do not fit smoothly into the § 552(a)(2) categories. If the test for "final opinions" is to be based in large measure on finality—and the *Sears* case, *supra* note 39, 421 U.S. at 158, 160, 95 S.Ct. 1504, suggests that it is—these threshold decisions are problematic. Nor do they comport readily with the other categories in § 552(a)(2).

In light of the considerations set forth in text, we do not now consider under what circumstances a decision may be deemed so collateral to an ongoing adjudicative procedure that it appears final in and of itself for § 552(a)(2) purposes.

41. It may turn out that the agency can best meet its responsibilities under § 552(a)(3) by preparing and releasing something closely resembling the sort of index it would have been required to prepare had § 552(a)(2) been applicable.

which there exists a continuing dispute.[42] With the exception of the issues left open by this remand, the decision of the District Court is affirmed.

So ordered.

42. As we have already noted, *see* 196 U.S. App.D.C. at ——, 606 F.2d at 1217, *supra,* the agency may want to take another look at the way it has exercised its discretionary authority to release some exempt documents. More particularly, its treatment of early filing date decisions lodged in abandoned application files appears curious. It released (in expurgated form) only those denying earlier filing dates. Yet there appears to be no reason to treat those granting earlier filing dates any differently.