ASSOCIATION OF RETIRED
RAILROAD WORKERS,
INC., Appellant,

v.

UNITED STATES RAILROAD
RETIREMENT BOARD, et al.

No. 85–5995.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 14, 1986.

Decided Oct. 2, 1987.

John Hardin Young, Washington, D.C., for appellant.

Thomas J. McIntyre, Dept. of Justice, with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before STARR and BUCKLEY,
Circuit Judges, and OLIVER GASCH,*
U.S. Senior District Judge for the
District of Columbia.

Opinion for the court filed by
Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

A non-profit association representing retired railroad workers appeals the district court's holding that the names and addresses of retired workers on file with the U.S. Railroad Retirement Board are exempt from disclosure pursuant to Exemption 3 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(3) (1982). The statutory provision at issue, section 12 of the Railroad Unemployment Insurance Act, prohibits disclosure of information revealing an employee's identity. 45 U.S.C. § 362(d) (1982). The mailing list sought by appellant falls squarely within this prohibition. Accordingly, we affirm the grant of summary judgment in favor of the Board.

I. BACKGROUND

Appellant is a non-profit organization "existing for the sole purpose of promoting the social welfare of all retired persons and, in particular, retired railroad workers." Brief for Appellant at 3. Appellees ("Board") administer the Railroad Retirement Act ("RRA"), 45 U.S.C. § 231 et seq., and the Railroad Unemployment Insurance Act ("RUIA"), 45 U.S.C. § 351 et seq.

Pursuant to FOIA, appellant on August 21, 1984 requested access to the names and addresses of retired railroad workers. Joint Appendix ("J.A.") at 8. The Board's

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

authority to disclose the requested information is governed by section 12(d) of RUIA, which states· in relevant part:

> Information obtained by the Board in connection with the administration of this chapter shall not be revealed or open to inspection nor be published in any manner revealing an employee's identity: *Provided, however,* That ... (ii) the Board may disclose such information in cases in which the Board finds that such disclosure is clearly in furtherance of the interest of the employee or his estate;....

45 U.S.C. § 362(d).

A week and a half later, on August 30, 1984, the Board denied the request. The grounds of denial were Exemption 3 of FOIA and the Privacy Act, 5 U.S.C. § 552a. J.A. at 10–11. Appellant filed a timely appeal and by follow-up letter stated that the information would be used no more than once a year to solicit retired railroad workers for membership. The solicitation would be by letter and brochure. The Association also stated that there would be no telegraph, telephone, or personal follow-up and that the names and addresses obtained would not be sold, distributed, or otherwise disseminated. J.A. at 18.

On October 16, 1984, the Board denied the appeal, holding in pertinent part that the documents were exempt from disclosure under Exemption 3:

> The Board finds that the standards provided in section 12(d) for the disclosure of information does "establish particular criteria for withholding" and consequently section 12(d) is a valid exemption three statute.

> \* \* \* \* \* \*

> ... The Board is of the opinion that the interest in disclosure does not override the individual's interest in privacy and, accordingly, finds that the requested information would also be exempt from mandatory disclosure pursuant to the sixth exemption.

J.A. at 20, 21.

Appellant filed a complaint on October 23, 1984 in district court pursuant to section 552(a)(4)(B) of FOIA, which states in relevant part:

> On complaint, the district court of the United States ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. *In such a case the court shall determine the matter de novo,* and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) [the nine FOIA exemptions] of this section, *and the burden is on the agency to sustain its action.*

5 U.S.C. § 552(a)(4)(B) (emphasis added).

The district court applied the two-step procedure identified in *Irons & Sears v. Dann,* 606 F.2d 1215, 1220 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980):

> When an agency claims an exemption under 5 U.S.C. § 552(b)(3) [Exemption 3], it is the Court's duty to determine, first, whether the statute upon which the exemption 3 claim is founded actually fits within the guidelines set forth in that section, and second, whether the information sought after falls within the boundaries of the non-disclosure statute.

J.A. at 52.

In a straightforward application of *Irons & Sears,* the district court ruled that section 12(d) of RUIA, as incorporated by reference into the RRA, 45 U.S.C. § 231f(b)(3), is an exempting statute for the purposes of Exemption 3 because it "refers to particular types of matters to be withheld" (quoting 5 U.S.C. § 552(b)(3)), and the information sought by appellant falls "squarely within § 12(d)." J.A. at 52. The district court entered summary judgment for appellees. We note that the district court, in its exercise of de novo review, applied Exemption 3 because it found that the statute "refers to particular matters" whereas the agency held that the statute "establishes particular criteria for withholding." On appeal, we review the district court's holding, not that of the agency.

## II. Discussion

### A. *Introduction*

FOIA exemptions are deceptively simple. Exemption 3 states that FOIA disclosure does not apply to matters

> specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

The exemption was amended in 1976 to overturn a Supreme Court decision in *FAA Administrator v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). As originally written, the exemption applied to any matters "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3) (1970). Under this broad language, the Court felt compelled to apply Exemption 3 to a statute that permitted the FAA "to withhold information, public disclosure of which, in [its] judgment, would adversely affect the interests of the objecting party and is not required to be disclosed in the interests of the public." *Robertson*, 422 U.S. at 259, 95 S.Ct. at 2144. The legislative history suggests that Congress felt *Robertson* gave an agency "carte blanche to withhold any information [it] pleases." *American Jewish Congress v. Kreps*, 574 F.2d 624, 628 (D.C.Cir.1978) (quoting H.R. Rep. No. 880, 94th Cong., 2d Sess., pt. 1, at 23 (1976)). The purpose of the amendment was "to assure that basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch." *Id.* at 628.

The amended exemption was passed into law, with little debate or comment, as a conforming amendment to the Sunshine Act, Pub.L. No. 94–409, § 5(b), 90 Stat. 1247 (1976). Perhaps as a consequence of its hurried drafting, the amendment is not a model of clarity. To be sure, the amendment sought to prevent agencies from withholding information under FAA-type statutes, *i.e.*, statutory language granting vast discretion over vast materials. The difficulty arises in applying Exemption 3 to the hundreds of other statutes written prior to and after FOIA. Congress chose to leave this task of classification to others. Hence, in Exemption 3 cases, the agency, and then the court, must determine at the outset the status of the relevant statute and only then review its application to the particular matter sought to be disclosed. This extra, initial step can raise difficult issues of construction if the affected statute does not neatly reveal itself as a withholding or non-withholding statute.

Early on, this circuit focused on the discretion permitted by the statute to the pertinent officials:

> [The statutes cited in legislative history] imply a congressional sense that the crucial distinction lay between statutes that in some manner *told* the official what to do about disclosure and those that did not significantly inform his discretion in that regard.

*American Jewish Congress*, 574 F.2d at 629 (emphasis in original). Easy cases are presented where the withholding statute "explicitly provide[s] for nondisclosure," as in *Baldrige v. Shapiro*, 455 U.S. 345, 355, 102 S.Ct. 1103, 1109, 71 L.Ed.2d 199 (1982); *see also Irons & Sears*, 606 F.2d at 1220. When the plain meaning establishes that the statute is a withholding statute, there is no need to consult the legislative history. *CIA v. Sims*, 471 U.S. 159, 167, 105 S.Ct. 1881, 1887, 85 L.Ed.2d 173 (1985) (CIA responsibility "to protect 'intelligence sources and methods,' clearly 'refers to particular types of matters.'" (citations omitted)); *see also Reporters Comm. for Freedom of the Press v. United States Dep't of Justice*, 816 F.2d 730, 735 (D.C.Cir.1987) (as a general matter the exempting purpose must appear in the "actual words of the statute....").

A related problem concerns the appropriate standard of review. The court's evaluation of an Exemption 3 dispute arises only after the agency charged with administering the statute has reached its own conclusions. General principles governing review of agency decisionmaking would ordinarily

require this court to give deference to the agency's reasonable interpretation. This circuit, however, has also found that FOIA presents unique circumstances. *Reporters Committee,* 816 F.2d at 734. No single agency is entrusted with FOIA's primary interpretation, and agencies are not necessarily neutral interpreters insofar as FOIA compels release of information the agency might be reluctant to disclose. Therefore, we have held that "Congress intended that the primary interpretive responsibilities rest on the judiciary, whose institutional interests are not in conflict with [those] statutory purpose[s]." *Id.*

The unfolding case law has thus fairly well settled the standards to be applied to the classification of statutes as withholding or non-withholding (*i.e.,* look to the plain language of the statute) and, in this circuit, the appropriate level of deference to be given to an agency's particular classification decision (*i.e.,* none). Consistent with these principles, we conclude that section 12(d) on its face qualifies for exemption because it "refers to particular types of matters to be withheld."

Exemption 3 divides existing statutes authorizing the withholding of information into two categories: Those in which Congress has mandated that information be withheld "in such a manner as to leave no discretion on the issue" are placed in subsection (A), and the remaining statutes in subsection (B), which "necessarily contemplates some exercise of administrative discretion." *Church of Scientology of Cal. v. United States Postal Service,* 633 F.2d 1327, 1330 (9th Cir.1980). The exemption applies if either prong is satisfied. *American Jewish Congress,* 574 F.2d at 628. Subsection (B) is in turn divided into two disjunctive parts: The first ("B–1") consists of statutes in which discretion may be exercised in favor of withholding information that would otherwise be subject to disclosure; and the second ("B–2") consists of statutes that "refer[ ] to particular types of matters to be withheld." The language suggests, and the courts have held, that the latter will consist of highly specific, limited categories of information.

Section 12(d) fits the B–2 requirement precisely. The category of prohibited disclosure is narrowly defined as information "in any manner revealing an employee's identity." Moreover, the directive from Congress is absolute. Except in the case of one clearly limited contingency here relevant (a Board finding that an employee's interest will be served by disclosure), the covered information is not to be released. 45 U.S.C. § 362(d) ("Information obtained by the Board in connection with the administration of this chapter shall not be revealed or open to inspection nor be published in any manner revealing an *employee's identity....*" (emphasis added)). Thus, in terms of the purposes of FOIA, the agency cannot improperly withhold information that Congress meant to be disclosed. In other words, section 12(d) is stated in terms of a hard mandate against disclosure softened by an allowance for discretion to be exercised only when the release of the information will *clearly* achieve the specified objective. This contrasts sharply with statutes allowing the agency broad authority to withhold what would otherwise be subject to release. Where the chance of erroneously withholding information Congress wished disclosed is non-existent and the description of the material to be withheld specific and limited, we confidently conclude that Congress meant such a statutory provision to fall within the ambit of Exemption 3.

Having determined that section 12(d) is properly classified as a withholding statute (*i.e.,* within the guidelines established by Exemption 3), we turn to the second step identified in *Irons & Sears,* namely, "whether the information sought after falls within the boundaries of the non-disclosure statute." J.A. at 52. While the lawyer's art can often be taxing, it is not always so. The section 12(d) prohibition against disclosure of identity plainly applies to a request for an employee's name and address. Hence we have no need to decide whether this determination by the agency deserves deference. *See Church of Scientology of Cal. v. IRS,* 792 F.2d 153, 167–70 (D.C.Cir. 1986) (Silberman, J., concurring), *cert. granted,* —— U.S. ——, 107 S.Ct. 947, 93

L.Ed.2d 996 (1987). By any standard, the statute covers the disclosure sought by appellant.

Appellant, however, raises a different claim. FOIA requires that the district court review de novo all agency decisions applying an exemption. 5 U.S.C. § 552(a)(4)(B). According to appellant, "[i]n *de novo* review, the district court is required to review the agency's exercise of its discretion to determine whether the agency's action comported with the requirements of the statute." Brief for Appellant at 13. Thus, says appellant, it is not enough to conclude that the information falls "squarely within § 12(d)." Appellant claims the court must go further and evaluate whether the specific disclosure requested would violate the purpose of the statute (*i.e.*, the court must decide de novo whether appellee appropriately balanced the benefit and cost of disclosure in this particular case). According to appellant, the Ninth Circuit adopted this approach in reaching its decision that a request for IRS computer tapes required the district court to determine whether the disclosure would seriously impair tax enforcement. Although the statute at issue was held to meet both prongs of section B of Exemption 3, the court required more:

> It is totally inconceivable that Congress, on the one hand, would seek to limit discretion by requiring that it be exercised according to particular criteria spelled out in the statute and, on the other hand, would render its exercise completely unreviewable, even where it had been clearly abused. We refuse to give the statute such an irrational construction.

*Long v. IRS*, 742 F.2d 1173, 1181 (9th Cir. 1984).

The Board characterized *Long* as wrongly decided and maintains that this proposal would impose an impermissible third level of review on top of the conclusive two-step *Irons & Sears* procedure. Citing a recent Supreme Court opinion applying Exemption 3 to the National Security Act, the Board concludes that the two-step analysis has been authoritatively approved by the Court, thus foreclosing appellant's suggestion of further review. *See CIA v. Sims*, 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985). Appellant responds that the holding in *Sims* is limited to requests for classified information and therefore does not apply to the present request for names and addresses to be used in an annual membership solicitation drive. For reasons stated below, we do not decide whether *Sims* controls disclosure requests governed by Exemption 3 that do not involve national security.

The Board by affidavit established that it balanced the interests of participants in disclosure (*i.e.*, solicitation by appellant to join its ranks) against the possible unwanted invasion of privacy and concluded that disclosure was unwarranted. Given the breadth of the statutory standard governing a decision to disclose in section 12(d) (the Board *may* disclose if "clearly in the furtherance of the interest of the employee or his estate"), the argument could be made that the district court's failure to review this conclusion is harmless, especially if the agency's decision is entitled to deference. *See Reporters Committee*, 816 F.2d at 735 n. 5 (dictum). However, we do not rest our decision on this ground. Rather, we find that the classification of section 12(d) as a B-2 statute is sufficient to trigger its exemption from FOIA. De novo review ends with the finding that the particular matter sought (*i.e.*, the mailing list) is covered by the statute (*i.e.*, information revealing an employee's identity).

It is quite true that FOIA mandates de novo review by the district court for all nine exemptions. 5 U.S.C. § 552(a)(4)(B). Yet the scope of the review is not identical in all cases. Here the district court properly discharged its de novo review obligations by applying the two-step *Irons & Sears* analysis. The Supreme Court expressly followed this two-step procedure in recent Exemption 3 cases. *Baldrige v. Shapiro*, 455 U.S. 345, 353, 102 S.Ct. 1103, 1108, 71 L.Ed.2d 199 (1982) (census data exempt from disclosure because the Census Act is an Exemption 3 withholding statute and the requested data is covered by the terms of the relevant provision); *Sims*, 471 U.S.

at 167–68, 105 S.Ct. at 1887 (Exemption 3 analysis complete when the court determines that the names of CIA researchers constituted statutorily protected "intelligence sources and methods."). These precedents establish at a minimum that de novo review in FOIA cases is not everywhere alike and that the two-step analysis is sufficient in at least some Exemption 3 cases. Hence when appellant freely admits that national security presents atypical considerations, he necessarily admits the principle that circumstances define the required scope of de novo review.

The alternative argument pressed by the government is that *Irons & Sears* wholly defines the requisite scope of review in Exemption 3 cases. *Cf. EPA v. Mink*, 410 U.S. 73, 95 n. *, 93 S.Ct. 827, 840 n. *, 35 L.Ed.2d 119 (1973) (Stewart, J., concurring) ("[T]he only 'matter' to be determined in a district court's *de novo* inquiry is the factual existence of [a relevant] statute, regardless of how unwise, self-protective, or inadvertent the enactment might be.") (cited with approval in *Goland v. CIA*, 607 F.2d 339, 350 n. 65 (D.C.Cir.1978)); *but see Long*, 742 F.2d at 1180 (arguing the footnote is of doubtful validity because Congress amended Exemption 1 in 1974 to overrule *Mink*). While we do not rule on the government's contention, it is clear the two-step analysis can satisfy FOIA de novo review. It remains to be seen whether it ought to satisfy the FOIA review requirement here.

The rationale underlying the Supreme Court's approach, though not explicitly articulated, derives from the fact that Exemption 3 presents considerations distinct and apart from the other eight exemptions. This much we explained in *Goland*, 607 F.2d at 350: "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." The required scope of review is further narrowed in the case of statutes falling within B–2 because the congressional intent to withhold is made manifest in the withholding statute itself. In effect, the purpose of Exemption 3—to assure that Congress, not the agency, makes the basic nondisclosure decision—is met once B–2 is found to apply. Hence the policing role assigned to the courts in a B–2 case is reduced.

This point is brought out yet more clearly by a specific analysis of section 12(d) of RUIA. There is a fundamental difference in the context of FOIA between the exercise of agency discretion to *withhold* information that will otherwise be available to the public and the exercise of discretion to *disclose* information that *must* otherwise be withheld. The public has a clear interest in statutory procedures that will ensure the propriety of any withholding of information but not in challenging the propriety of its release. The only parties with a direct interest in the latter are those who may be injured by an improper disclosure, and they do not rely on FOIA de novo review in order to protect their rights to privacy. In the instant case, we find that de novo review is satisfied by the *Irons & Sears* framework because section 12(d) of RUIA is written to permit disclosure of otherwise non-disclosable material. All B–2 statutes may be so covered, but we have no need to rule so broadly.

Given this disposition, we need not decide whether we stand in conflict with the Ninth Circuit's holding in *Long*. The IRS statute at issue in *Long* stated criteria by which disclosure could be defeated, *i.e.*, whether a request for certain IRS computer tapes would in fact "seriously impair assessment, collection or enforcement under the internal revenue laws." *Long*, 742 F.2d at 1180 (citing 26 U.S.C. § 6103(b)(2) (1982)). This case, by contrast, turns on a provision that gives an agency discretion to disclose. The statutory distinction is critical in the context of FOIA and hence undermines appellant's argument that the reasoning in *Long* ought to be adopted by this circuit. In addition, the *Long* court expressly sanctioned the extra level of review to determine if "particular criteria" warranted withholding. *Id.* at 1181. Here, also by contrast, we deal only with a B–2 Exemp-

tion. We therefore do not decide the level of de novo review required for a B–1 statute, nor do we decide if the scrutiny varies by individual statute.

## III. Conclusion

Section 12(d) prohibits an agency from releasing information that would "in any manner reveal[] an employee's identity." 45 U.S.C. § 362(d). Under FOIA, this constitutes "particular matter to be withheld." 5 U.S.C. § 552(b)(3). Appellant's request for names and addresses falls within the boundaries of the section 12(d) prohibition on disclosure. The district court, in its exercise of de novo review, independently approved both findings. No more was required. Accordingly, the decision of the district court granting summary judgment to appellees and refusing to compel disclosure under FOIA is

*Affirmed.*