**Jackson LEEDS, Appellant,**

v.

**COMMISSIONER OF PATENTS AND TRADEMARKS, Appellee.**

No. 90–5298.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 9, 1992.

Decided Feb. 14, 1992.

---

Jackson Leeds, pro se.

John W. Behringer, Washington, D.C., (appointed by the Court) * for amicus curiae, urging that the Patent and Trademark Office be ordered to either produce an index that will provide the public with satisfactory and meaningful access to Rule 109 Statements, or gather together and produce the actual documents responsive to appellant's request.

Fred E. Haynes, Asst. U.S. Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., John D. Bates, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellee. Nathan Dodell, Special Asst. U.S. Atty., Dept. of Justice, Washington, D.C., also entered an appearance for appellee.

Before WALD, SILBERMAN and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Jackson Leeds seeks access under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to statements of "Reasons for Allowance" of patent claims prepared pursuant to § 1.109 of the Patent and Trademark Office's ("PTO") regulations.[1] The Commissioner of the PTO responded to Leeds' request by stating that all statements of reasons for allowance, including those made pursuant to Rule 109 ("Rule 109 statements"), are available to Leeds as part of the patent files themselves, which are open to public inspection and indexed according to number, owner, and subject matter. Leeds brought suit seeking a declaratory judgment that the Commissioner is required to provide a separate index to Rule 109 statements under § 552(a)(2),[2] or to make these documents available separately from the rest of the files in which they repose under § 552(a)(3).[3]

---

* The Court wishes to thank the *amicus curiae* for his able assistance in this appeal.

1. The regulation provides in relevant part:

   If the examiner believes that the record of the prosecution as a whole does not make clear his or her reasons for allowing a claim or claims, the examiner may set forth such reasoning. The reasons shall be incorporated into an Office action rejecting other claims of the application or patent under reexamination or be the subject of a separate communication to the applicant or patent owner.

   37 C.F.R. § 1.109 (1990).

2. That provision of FOIA provides in relevant part:

   Each agency, in accordance with published rules, shall make available for public inspection and copying—

   (A) final opinions ... as well as orders, made in the adjudication of cases.... Each agency shall also maintain and make available for public inspection and copying current indexes providing identifying information for the public as to any matter issued, adopted, or promulgated ... required by this paragraph to be made available or published. 5 U.S.C. § 552(a)(2) (1977 & Supp.1991).

3. That provision of FOIA provides in relevant part:

   Except with respect to records made available under paragraphs (1) and (2) of this subsection, each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules ... and procedures ... shall

In granting summary judgment for the Commissioner, the district court ruled that a patent examiner's Rule 109 statements are not separate "final opinions ... made in the adjudication of cases" within the meaning of § 552(a)(2), and are therefore not required to be indexed. *Leeds v. Commissioner of Patents and Trademarks*, Civil Action No. 90–1038 (D.D.C. Aug. 31, 1990). We agree that Rule 109 statements are not separate and distinct "final opinions" requiring indexing under FOIA, and because such statements are already made available as part of the indexed files on all issued patents, they fall within the exception listed in § 552(a)(3) for records made available under § 552(a)(2).

## I. BACKGROUND

An understanding of the function of Rule 109 statements in the context of the examination of a patent application is crucial to deciding this case. Under his statutory grant of authority, the Commissioner is required to "superintend or perform all duties required by law respecting the granting and issuing of patents." 35 U.S.C. § 6(a). To comply with its statutory mandate, the PTO examines patent applications to determine the patentability of the claim or claims in the applications. Each patent application contains "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 (1988). Patent claims define the invention for the purpose of applying the conditions of patentability, *i.e.*, eligible subject matter, originality, novelty, utility, and non-obviousness; the statutory bars; and the disclosure requirements. *See* 2 Donald S. Chisum, *Patents* § 8.01 (1991).

The claims also define the invention for the purpose of determining infringement, *i.e.*, what constitutes the process or thing that may not be made, used, or sold in the United States without the permission of the patent owner. *Id.*

If the patent examiner decides that a patent application should be granted, he must ensure that the patent file, the record detailing the prosecution history of the issued patent, is as complete as reasonably possible, and that the reasons why the patent application is allowed are evident from the file record. *See Manual of Patent Examining Procedure* § 1302.14 (5th ed. 1983 & Supp.1989) [hereinafter *MPEP*]. If the examiner determines at any point that the record does not make clear his reasons for allowing the patent, he may, pursuant to Rule 109, write up and put in the file a separate statement of reasons. *See* 37 C.F.R. § 1.109. The Manual provides that "each statement should include at least: (1) the major difference in the claims not found in the prior art of record, and (2) the reasons why that difference is considered to define patentability over the prior art if either of these reasons for allowance is not clear in the record." *MPEP*, § 1302.14. The Manual goes on to make clear, however, "that the statement is not intended to necessarily state all the reasons for allowance or all the details why claims are allowed and should not be written to specifically or impliedly state that all the reasons for allowance are set forth." *Id.* Rule 109 statements are designed to supplement the existing record, when necessary, so that a reader of the patent file will be better able to understand the reasons for allowing the claims.[4]

make the records promptly available to any person.

5 U.S.C. § 552(a)(3) (1977 & Supp.1991).

**4.** The Manual lists the following examples of Rule 109 statements from illustrative cases:

Ex. 1. The primary reason for allowance of the claims is the inclusion of .03 to .05 percent nickel in all of the claims. Applicant's second affidavit, in example 5 shows unexpected results from this restricted range.

Ex. 2. During two telephonic interviews with applicant's attorney, Mr. \_\_\_\_ on 5/6 and 5/10/77, the examiner stated that applicant's remarks about the placement of the primary teaching's grid member were persuasive, but he pointed out that applicant did not claim the member as being within the reactor. Thus, an amendment doing such was agreed to.

Ex. 3. The instant application is deemed to be directed to an unobvious improvement over the invention patented in Pat. No. 3,953,-224. The improvement comprises baffle means 12 whose effective length in the extrac-

Upon approval of the claim by the examiner, the patent is issued. The PTO then indexes every issued patent according to patent number, subject matter ("class/sub-class"), and owner.[5] Through the use of these indices, any interested party can find a particular patent file, which will document the entire record of its journey through the patent office and all reasons for the patent's allowance, including, where applicable, Rule 109 statements.

## II. DISCUSSION

Leeds argues that the district court erred in granting summary judgment in favor of the Commissioner. He argues that Rule 109 statements are separate and distinct "final opinions" within the meaning of § 552(a)(2) and, as such, must be separately indexed apart from the patent file.

FOIA does not define the term "final opinion." As previously noted, in *Irons & Sears v. Dann,* 606 F.2d 1215, 1223 n. 40 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980), however, the Supreme Court has suggested that the test of a "final opinion[ ]' is to be based in large measure on finality." *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 158–60, 95 S.Ct. 1504, 1520–21, 44 L.Ed.2d 29 (1975). In *NLRB v. Sears,* the documents sought were Advice and Appeals Memoranda written by the General Counsel of the National Labor Relations Board to explain his decisions whether to file complaints for unfair labor practices. The Board panel adjudicates a charge brought by a private party only after the General Counsel determines whether to file the charge as a "complaint." Because the General Counsel has unreviewable authority to determine whether to file a complaint, the Supreme Court held that where the General Counsel refused to file a complaint, the Advice and Appeals Memoranda explaining his decision were "final opinions made in the adjudication of cases"; but where he decided to file a complaint, the Advice and Appeals Memoranda were not "final opinions," *id.* at 148, since they signaled the commencement not the termination of litigation. It was the finality of the decision as regards the future of the claim that determined whether the reasons underlying it were disclosable under FOIA.

In this case it is the act of granting or denying a patent that represents the final decision on the claim. Until the patent issues, any statement of reasons for allowance, whether made under Rule 109 or otherwise, is subject to revision or withdrawal. *See, e.g.,* 37 C.F.R. §§ 1.119, 1.138, 1.312, 1.313; *MPEP,* §§ 706.04, 1308.03, 1308.1. And when it does issue, all statements of reasons—indeed the entire history of the application—including any Rule 109 statement are made public as part of the indexed patent file. Because the decision whether to grant or deny the application is the final disposition made in

tion tower may be varied so as to optimize and to control the extraction process.

Ex. 4. Upon reconsideration, this application has been awarded the effective filing date of S.N. ____. Thus the rejection under 35 U.S.C. 102(d) and 103 over Belgium Patent No. 757,246 is withdrawn.

*MPEP,* § 1302.14. These examples make it abundantly clear that a Rule 109 statement cannot generally be understood except within the context of the entire patent file.

**5.** The PTO publishes an annual *Index of Patents,* which provides in Part I an alphabetical "List of Patentees" and in Part II, an "Index to Subjects of Invention."

The PTO maintains indices of the following types of final decisions: (1) the aforementioned *Index of Patents;* (2) *ex parte* decisions of the Board of Patent Appeals and Interferences; (3) *inter parte* decisions of the Board of Patent Appeals and Interferences; (4) decisions denying delayed payment of maintenance fees; (5) decisions determining eligibility for extension of patent term; (6) decisions denying relief from provisions related to reexamination; (7) decisions upholding the denial of reexamination requests; (8) decisions denying extensions of time in a reexamination; (9) decisions of the Trademark Trial and Appeal Board; (10) Commissioner's decisions in trademark matters; (11) Commissioner's decisions in disciplinary matters; (12) Commissioner's decisions concerning practice before the PTO; (13) Commissioner's decisions in regrades of the PTO registration examination; and (14) Commissioner's decisions concerning scientific and technical training requirements for practice before the PTO. *See Irons v. Gottschalk,* 369 F.Supp. 403, 409–10 (D.D.C.1974), *remanded,* 548 F.2d 992 (D.C.Cir.1976), *cert. denied,* 434 U.S. 965, 98 S.Ct. 505, 54 L.Ed.2d 451 (1977).

an adjudication by the PTO, the Commissioner argues that any official expressions made at intermediate steps through which the claim passes on its way to the final decision, even a statement made at the end of the process to supplement the record, lack the finality required to be a "final opinion." The Commissioner also argues that Rule 109 statements are not "final opinions" because they do not purport to summarize or fully explain the rationale for the final adjudication.

First, an examiner's decision to add a Rule 109 statement to the file does not necessarily occur at the end of the patent application process.[6] As discussed *infra*, each patent application must contain at least one claim and may contain many different ones. Each claim must be individually examined and specifically allowed by an examiner. Thus, the examination of a single patent application may involve anywhere from one to dozens of official actions on the part of an examiner. At any point in the process, an examiner may determine that some or all of the claims are eligible for allowance and prepare a Rule 109 statement for the file. On the other hand the examiner may determine that no Rule 109 statement is needed at any time because the record is already clear as to the reasons for allowing the patent. Those reasons may be found in a variety of official communications at all stages of the patent application process, none of which were made pursuant to Rule 109. Indeed, the same patent file might contain several statements in which an examiner indicated different reasons for allowing different claims at different stages of the prosecution. Only when the examination of an application is finally completed, do all claims allowed during any prior stage of the application process become the official

claims protected by the patent. There is thus nothing inherent in Rule 109 statements that "effect as 'final' a 'disposition' as possible, as an administrative decision can." *NLRB v. Sears*, 421 U.S. at 155, 95 S.Ct. at 1519.

Other considerations affecting at least some Rule 109 statements point to a lack of "finality" as well. (1) Until a patent issues, an applicant can choose to delete an allowed claim or to abandon the case (37 C.F.R. § 1.138); (2) an applicant is also permitted to amend or broaden claims even though an examiner has already indicated that the claims are eligible for allowance (37 C.F.R. §§ 1.119 & 1.312); (3) an examiner may withdraw his "reasons for allowance" if he later discovers a statutory ground on which to reject a claim (37 C.F.R. § 1.313; *MPEP*, §§ 706.04 & 1308.-1); (4) the PTO maintains a quality enhancement program under which allowed applications are randomly reviewed for errors by PTO officials, *see MPEP*, § 1308.-03, and if an error is discovered, the application is returned to the examiner for further consideration.

In sum, the final decision on a patent application does not occur until the agency issues the patent, not at the stage when it allows any individual claim or group of claims and files (or does not file) a Rule 109 statement explaining the reason therefor. Until a patent finally issues, any reason for allowance, including Rule 109 statements, remains subject to review or modification by the examiner, the applicant, or reviewing officials in the PTO. And all reasons for allowance, whether issued pursuant to Rule 109 or otherwise, are included in the patent file history, which is indexed by name, subject matter, and patent number, and made available to the public.[7]

---

6. We need not address the question raised in *Irons & Sears v. Dann* of when a decision may be so collateral to an ongoing adjudicative procedure that it will be deemed final for § 552(a)(2) purposes. *See Irons & Sears*, 606 F.2d at 1223 n. 40. Any expression of reasons for allowing a patent claim are central not collateral to the final decision whether to grant the patent application.

7. As the Manual points out, because Rule 109 statements, like any reason for allowing a patent, may have "possible estoppel effects," the examiner must ensure that Rule 109 statements be "accurate, [and] precise" without placing "unwarranted interpretations ... upon the claims." *See MPEP*, § 1302.14. Patent files containing Rule 109 statements, however, are no more or less authoritative than patents which do not contain them. A Rule 109 statement has no

Second, even if, as the Manual suggests, most Rule 109 statements are made at the end of the process when the patent is about to issue, that fact still does not qualify such statements as "final opinions." For a Rule 109 statement does not purport to contain a complete (or standing alone, comprehensible) rationale as to why a patent has been allowed. *See MPEP,* § 1302.14. Its function is essentially supplementary, to fill in gaps or holes in the file record by which a reader might be confused as to one or more reasons for allowance of one or more particular claims. There may of course be several important reasons why a patent is allowed, some of which are clear from the record without an additional Rule 109 statement, and some of which might in the interests of completeness require one. An interested party would in all cases have to read the entire file (and not just the Rule 109 statement) to understand why a patent was allowed.[8]

We know of no decision ruling that documents already made available to the public as part of indexed "final dispositions," are themselves deemed separate and distinct "final opinions" within the meaning of FOIA, subject to a separate indexing requirement. In *Bristol–Myers Co. v. FTC,* 598 F.2d 18 (D.C.Cir.1978), a FOIA request was made for documents prepared by the Federal Trade Commission during an investigation and enforcement proceeding. We ruled that *if* memoranda existed explaining the FTC's decision to terminate an enforcement proceeding or not to include a proposed charge in a complaint, they would be considered "final opinion[s]" and disclosable under FOIA. *Id.* at 25–26. The question in *Bristol–Myers,* however, was not whether such a memorandum was a separate and distinct final opinion from the statement terminating the enforcement proceeding, thus requiring a separate index, but rather whether such documents had to be made available at all. *Bristol–Myers* held only that the explanation of an

agency's final decision needed to be publicly available along with the decision itself. Rule 109 statements, along with everything else, are publicly available in indexed patent files. A request that they be separately indexed would be akin to requesting that every one of several reasons listed in a single "final opinion" be indexed separately. FOIA provisions make no such excessive demands.

Our result in no way impugns the "strong theme" in our FOIA decisions that "an agency will not be permitted to develop a body of *secret law used by it* in the discharge of its regulatory duties," not available to public scrutiny. *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 867 (D.C.Cir.1980) (emphasis added). In *NLRB v. Sears,* 421 U.S. at 132, 95 S.Ct. at 1504, as in *Coastal States,* the memoranda were used to develop "uniform policies" of prosecution and relied upon as separate documents by agency personnel to make decisions on whether to file complaints in similar cases. Rule 109 statements, on the other hand, are not used as directives or as policies by the PTO staff. They are not even collected and maintained independently from the patent files for patent office examiners' or employees' perusal. The public has the same access to patent files and Rule 109 statements therein as the PTO personnel. Moreover, a patent examiner would have no cause to look at a Rule 109 statement outside of its contextual file. There is therefore no way that Rule 109 statements could be used to create a "body of secret law." *See Coastal States,* 617 F.2d at 867.

## III. CONCLUSION

As our preceding analysis indicates, Rule 109 statements are not separate and distinct "final opinions" but instead are an interim part of the final decision issuing the patent. All of the reasons for that final decision are contained in the entire patent file; these files are available to the

more or less value as a precedent than any other reason for allowance inferable from or explicitly set out in the patent file record.

**8.** Every page in a patent file might arguably provide some information as to why the patent was allowed; Leeds' Rule 109 request is thus similar to a request for a separate index listing all patent files containing a diagram.

public and appropriately indexed under § 552(a)(2). Because Rule 109 statements are already available under § 552(a)(2), they are specifically excepted from the category of documents that must be produced upon request under § 552(a)(3). "The agency's responsibilities are at an end once it provides a reasonable index of the requested decisions and makes the files containing them available." *Irons & Sears*, 606 F.2d at 1223. The district court properly held that the PTO was not required under FOIA to search for, copy, and provide Leeds with all Rule 109 statements requested.

For the foregoing reasons, we affirm the district court's decision upholding the Commissioner's refusal to index the Rule 109 statements or to identify and collect them separately for public disclosure.

*So ordered.*